Juyoun Han (*pro hac vice* to be filed)
Eric Baum (*pro hac vice* to be filed)
EISENBERG & BAUM, LLP
24 Union Square East, PH
New York, NY 10003
Tel: (212) 353-8700
Fax: (212) 353-1708

John K. Buche (SBN 239477) (Local Counsel)
Byron Ma (SBN 299706) (Local Counsel)
THE BUCHE LAW FIRM, P.C.
901 S MoPac Expy, Bldg. 1, Ste. 300
Austin, TX 78746
Tel: (512) 215-4997
jbuche@buchelaw.com
bma@buchelaw.com

*Attorneys for Plaintiff*
*The Latino Medical Student Association-Northeast*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE LATINO MEDICAL STUDENT ASSOCIATION-NORTHEAST,<br><br>*On behalf of themselves and all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>FLIPCAUSE, INC., EMERSON VALIAO, and SEAN WHEELER,<br><br>*Defendants.* | Civil Action No.: 4:25-cv-9047<br><br>**COMPLAINT**<br>**[PUTATIVE CLASS ACTION]**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

PARTIES ............................................................................................................. 2

JURISDICTION AND VENUE ........................................................................... 2

FACTUAL ALLEGATIONS ............................................................................... 3

CLASS ACTION ALLEGATIONS ..................................................................... 9

FIRST CAUSE OF ACTION: CONVERSION ................................................. 13

SECOND CAUSE OF ACTION: FRAUDULENT MISREPRESENTATION .............. 14

THIRD CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION ...................... 15

FOURTH CAUSE OF ACTION: NEW YORK GENERAL BUSINESS LAW § 349 .... 16

FIFTH CAUSE OF ACTION: NEW YORK GENERAL BUSINESS LAW § 350 ........ 18

SIXTH CAUSE OF ACTION : CALIFORNIA BUSINESS AND PROFESSIONAL
CODE §§17200 & 17500 ................................................................................... 19

SEVENTH CAUSE OF ACTION : BREACH OF CONTRACT ................................. 20

EIGHTH CAUSE OF ACTION : UNJUST ENRICHMENT ...................................... 21

NINTH CAUSE OF ACTION : INJUNCTIVE RELIEF ........................................... 21

PRAYER FOR RELIEF ..................................................................................... 22

DEMAND FOR JURY TRIAL .......................................................................... 24

i

**INTRODUCTION**

1.      This action arises from a nationwide scheme by fundraising platform Flip Cause, Inc. and its executives ("Flipcause") to defraud and systematically deprive non-profit organizations of the very funds they raised for their charitable missions. Flipcause holds itself out as a "one-stop platform" for non-profits ("Account Holders"), promising immediate access to donated funds and transfers within 1-5 business days. In reality, Flipcause created a financial nightmare for the thousands of charities that entrusted it with their donations.

2.      Plaintiff The Latino Medical Student Association-Northeast ("LMSA-NE"), a 501(c)(3) non-profit dedicated to supporting Latino medical students, is one such victim. As of the filing of this complaint, Flipcause is unlawfully withholding over $75,000 in funds belonging to LMSA-NE, providing only evasive and canned responses to LMSA-NE's repeated demands for its own funds. This has materially harmed LMSA-NE's mission, forcing it to drain its savings and jeopardizing its ability to host medical conferences for thousands of students.

3.      LMSA-NE is not alone. A mountain of evidence reveals a clear and disturbing pattern of Flipcause withholding hundreds of thousands of dollars from charities across the country. While non-profits have been forced to suspend operations, lay off staff, and default on obligations, Flipcause has issued misleading public statements blaming "cash flow bottlenecks" while insisting the company remains "healthy." Meanwhile, LMSA-NE is informed that Flipcause is making effort to be acquired, while its Account Holders' funds are being held at ransom and while its representations to Account Holders are known to be false.

4.      This lawsuit seeks to hold Flipcause and its leadership accountable for their misrepresentations and wrongful conduct and to recover the millions of dollars in charitable funds they are unlawfully withholding from LMSA-NE and the entire class of similarly situated non-profits.

1

COMPLAINT

**PARTIES**

5.    At all relevant times, Plaintiff the Latino Medical Student Association-Northeast ("LMSA-NE") is a 501(c)(3) non-profit, headquartered in New York and affiliated with the National Latino Medical Student Association. As a result of Defendants' legal violations, Plaintiff has suffered injury in fact. Plaintiff brings this action on behalf of all others similarly situated.

6.    Defendant Flipcause, Inc. ("Flipcause") is a for-profit Delaware Corporation with its principal place of business in Oakland, California, doing business in California as Flipcause, Inc.

7.    Defendant Emerson Valiao was the founding CEO of Flipcause from and during relevant times of the events that occurred in this lawsuit.

8.    Defendant Sean Wheeler is the CEO of Flipcause.

9.    Plaintiff further alleges that each and all of the Defendants (Valiao, Wheeler, and Flipcause, collectively, "Defendants" hereinafter) are directly liable and/or vicariously, jointly and severally liable for the violations of consumer protection laws, breach of contract, and violation of tort law claims alleged herein.

10.    Upon information and belief, Defendants' conduct directly affects thousands of Flipcause's Account Holders to whom each Defendant owes a legal duty and to whom each Defendant is directly responsible for damages and the injuries caused.

**JURISDICTION AND VENUE**

11.    This Court has diversity jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interest and costs, exceeds $5,000,000 and is a class action in which some members of the class are citizens of states different from the states where Defendants are citizens.

12.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District as Defendants

2

COMPLAINT

are: (a) authorized to conduct business in this District and has intentionally availed itself to the laws and markets within this District through the promotion, marketing, distribution and sale of its products in this District; (b) currently conducting substantial business in this District; and (c) are subject to personal jurisdiction in this District.

## **FACTUAL ALLEGATIONS**

13.    Flipcause is a fundraising and donor-management software platform marketed for small businesses and nonprofit organizations.

14.    Starting in 2012 as a fundraising platform, Flipcause has grown to become a "one-stop platform where groups could manage donors, register event attendees, recruit volunteers, sell products with an online store, and accept donations."[1]

15.    Upon information and belief, more than 10,000 nonprofit organizations use (or have used) Flipcause during all relevant times.

16.    Flipcause's Terms and Conditions states: "If you possess a Flipcause Account Balance, the total amount of your Account Balance is considered a financial asset wholly owned, received, and controlled by you, the Account Holder, and is a financial obligation to be paid to you, the Account Holder by Flipcause. Flipcause will pay funds owed to you using an ACH-enabled, non-interest bearing account ("Settlement Fund") in Flipcause's name, owned by Flipcause, and registered through a 3rd party financial institution that is part of the Federal Deposit Insurance Corporation ("FDIC") insurance program. Users consent to the management and operation of the Settlement Fund by Flipcause to perform activities related to the operation of Flipcause, Flipcause Account Holders, Fundraisers, or Supporters, including processing Transfers, issuing refunds, or other activities. Account Holders will have a full claim as a creditor to the funds owed to them by Flipcause. Account Holders will not receive interest or other earnings on the amounts in their Flipcause

---

[1] https://oaklandvoices.us/2025/09/11/flipcause-delayed-donation-transfers-nonprofits/.

COMPLAINT

Account Balances." [2]

17.     Flipcause's Terms and Conditions state that transfers take 1-5 business days,[3] and on their website.

18.     Flipcause advertises "As soon as a transaction is processed, the funds are in your account and available for transfer. You control when and how much you transfer – no waiting 30 days for a payout."[4]

19.     Flipcause charges a per "Transaction Fee" equivalent to 6.9% + 30 cents for all web payments to its clients or their donors which is applied to every donation, order, payment, invoice. It also charges its clients yearly subscription of $1500-$2400 dollars for their services.

20.     Upon information and belief, in the past two (2) years to date, Flipcause Account Holders have experienced delays in receiving payments.

21.     From 2018 until 2025, LMSA-NE had purchased and subscribed to Flipcause paid an annual subscription fee.[5]

22.     On August 10, 2025, LMSA-NE requested transfer of funds from its Flipcause account to LMSA-NE's bank account associated with Flipcause. The first request was in the amount of $50,000.00 and the second request was in the amount of $25,223.71. Flipcause has not fulfilled this request.

23.     Throughout September 2025, LMSA-NE reached out to Flipcause notifying them of the un-fulfilled fund transfer request.

24.     Flipcause sent an email with the following canned responses:

- "I will follow up with you once I hear back from our ACH

---

[2] Flipcause, Terms and Conditions § 17.1, Flipcause (last updated Sept. 3, 2024), https://flipcause.org/terms/
[3] *Id.* at 17.3.
[4] Flipcause, Payment Processing, Flipcause (last visited Oct. 17, 2025), https://flipcause.org/payment-processing/.
[5] In 2018, the transaction fee and annual subscription fee offered to LMSA-NE was 4.9%+30 cents and $1200 per year.

COMPLAINT

provider and will provide a date on when you will receive your funds. Please be assured we will get this resolved and have your funds expedited as soon as possible."

- "We are reviewing the request with our ACH service to confirm the status and processing of your requests. We'll follow up with confirmation as soon as possible."

- "I'm pushing to get you an immediate update on the release of your $75,223.71. I'll also make sure you receive a full accounting of donations and disbursements tied to your account."

25.    LMSA-NE relied on these representations and waited for responses, and as a result, had to suffer monetary loss by having to retrieve funds from their interest-bearing savings account due to Flipcause's misrepresentation(s) while continuing to withhold funds.

26.    Flipcause has not followed up with the status of LMSA-NE's pending fund transfer request.

27.    To date, Flipcause has not furnished any explanation about the delay, nor an accounting of the donations and disbursements of LMSA-NE's account.

28.    To date, Flipcause is unlawfully withholding $75,223.71 of funds rightfully belonging to LMSA-NE.

29.    On September 22, 2025, LMSA-NE reached out to Flipcause to cancel its subscription with Flipcause. The cancellation process includes the transfer of funds, but this has not happened. "Transferring Your Account Balance . . . Once your account is ready for closure, an admin with the necessary permissions can complete the final transfer of any remaining funds in the Account Balance."

30.    The cost of transition includes changing to a new service, notifying existing donors and patrons which creates loss, friction, and confusion, and unpublishing of the Account Holder's website which requires a new website to be built.

COMPLAINT

31.    The protracted withholding of the Plaintiff's funds by Defendants incurs continuing loss of interest and depreciation of money, which could have been transferred to interest-bearing accounts or other assets.

32.    LMSA-NE incurred the discontinuity of services, loss, friction, and confusion to donors, and staff time due to Flipcause's actions. LMSA-NE also incurred out-of-pocket costs in transitioning to a new donor payment service and building a new website, that amounts to $1,474.20.

33.    The withholding of these funds has caused injury-in-fact and materially harmed Plaintiff's ability to make time-sensitive deposits for regional medical conferences involving thousands of students and dozens of medical schools and residency programs.

34.    Flipcause's continued delay has harmed LMSA-NE's mission, limiting Plaintiff's ability to support Latino medical students, and undermining trust with medical schools, students, and our partners including the National Latino Medical Student Association.

35.    LMSA-NE is not the only entity reporting chronic failures by Flipcause to transfer funds to Account Holders. Upon information and report, numerous nonprofit organizations who are account holders of Flipcause reported similar violations that caused severe harms.

36.    The Oakland Voices reports that Flipcause owed the nonprofit organization East Oakland Collective (EOC) – who runs food pantries, senior wellness programs, and services for unhoused residents – more than $100,000. The executive director stated that issues with transfer delays occurred since 2023 where transfer requests were unanswered for months despite multiple emails. "For about six months, we were being ignored…It's not sustainable to have to wait six months for each request." (quoting EOC Executive Director Candice Elder). [6]

---

[6] Rasheed Shabazz, Flipcause Withholding Thousands of Dollars from Nonprofits, Oakland Voices (Sept. 11, 2025), https://oaklandvoices.us/2025/09/11/flipcause-delayed-donation-transfers-nonprofits/.

37.    Similarly, Oakland Voices also reported that The Village Method, a youth development organization serving youth and families in southern Alameda County was owed $7,500 by Flipcause and the transfer request was in the 'pending' status for two months.

38.    According to ABC, Bunny Blessings, an organization that takes therapy rabbits to senior citizen homes, hospice locations, and schools in the Charlotte, North Carolina area faced similar delays in transfer requests, where Flipcause "would typically say there was a problem with their- the bank that they were using, and it was going to get better. They expected it to be better in a month or two." [7]

39.    Also according to ABC, Shakespeare Youth Festival in Los Angeles had to withhold paychecks from staff employees because Flipcause failed to transfer funds on time. [8]

40.    In an interview with ABC, Tammy Clark of Homeless Hands stated the that the delays at Flipcause almost brought the nonprofit organization to a close, and that even though they were eventually paid what was owed, the organization lost "dozens of regular donors" because of the delays and its harm to stakeholders. [9]

41.    New Day Advocacy Center, a domestic violence center in Ashland, Wisconsin stated that the delay of the transfer of funds harmed the organization and the community of domestic violence victims that they serve: "That's money that we can't forward on to our clients, or that's money that we can't use to purchase gas cards. That's money that we can't use to purchase food; that's money that we can't use to purchase supplies, and it hurts." [10]

---

[7] Dan Noyes, EXCLUSIVE: Bay Area Company Accused of Mishandling Thousands of Dollars in Nonprofits' Donations, ABC7 (San Francisco), Sept. 13, 2025, https://abc7news.com/post/exclusive-wheres-money-oakland-california-based-company-flipcause-accused-mishandling-nonprofits-donations-us/17809391/.
[8] *Id.*
[9] *Id.*
[10] *Id.*

COMPLAINT

42.    Nonprofit leaders have begun submitting complaints to the Better Business Bureau (BBB), and the number of reports filed exceeded 100. BBB has created an alert against Flipcause citing a pattern of complaints regarding the delays and nonresponse. A review of complaints was done in August 2025 by BBB. Complaints indicate significant delays and nonresponse to inquiries about the delayed funds. Each complaint cites thousands of dollars withheld.[11]

43.    Sean Wheeler of Flipcause made a public statement entitled, "Message from the CEO" with a cursory explanation of the issue: "Our credit card settlement system and our ACH settlement system operate differently. Credit card flows have continued normally, but our ACH settlement account has faced daily limits due to cash flow bottlenecks tied to our capital structure. That structural mismatch created a backlog of ACH transfers, even though the Company itself remains healthy. We are in the final stages of resolving this with our partners, and once complete, all pending transfers will be cleared immediately."

44.    Upon information and belief, this statement is untrue. Flipcause is unstable and seeking to be acquired and is at this time unable or unwilling to transfer the funds to the Account Holders.

45.    According to ABC, an employee stated: "Not even we as employees are getting any real answers or timelines on what the (expletive) is going on."[12]

46.    This putative class action demands that Defendants be held liable for violation of the terms and conditions of their contract in which they owed a duty to Plaintiff to transfer funds within 1-5 business days and failed to fulfill the duty.

47.    This putative class action further demands that Defendants be held liable for

---

[11] Flipcause, Inc., BBB Complaints, Better Business Bureau (Oakland, CA), available at https://www.bbb.org/us/ca/oakland/profile/crowdfunding/flipcause-inc-1116-537273/complaints?sort=recent&status= (last visited Oct. 17, 2025).

[12] Dan Noyes, EXCLUSIVE: Bay Area Company Accused of Mishandling Thousands of Dollars in Nonprofits' Donations, ABC7 (San Francisco), Sept. 13, 2025, https://abc7news.com/post/exclusive-wheres-money-oakland-california-based-company-flipcause-accused-mishandling-nonprofits-donations-us/17809391/.

COMPLAINT

the tort of conversion of Plaintiff's property.

48.     This putative class action further demands that Defendants be held liable for misrepresentation where they advertised to Plaintiff that funds would be available immediately, and later, that Flipcause would provide "an immediate update on the release of your $75,223.71 . . ." and "make sure you receive a full accounting of donations and disbursements tied to your account." These misrepresentations were material and resulted in the injury suffered by Plaintiff and putative class members.

49.     This putative class action also demands that Flipcause be found liable for misrepresentation when Sean Wheeler represented that there was a "structural mismatch created a backlog of ACH transfers, even though the Company itself remains healthy." These misrepresentations were material and resulted in the injury suffered by Plaintiff and putative class members.

50.     The same actions of Flipcause stated in preceding paragraphs violate various state consumer protection laws including unfair business practices, misrepresentations, and false advertising.

51.     Due to the above-stated violations, Plaintiff and putative class are therefore entitled to preliminary and permanent injunctions for immediate transfer of funds owed to them, and compensatory and punitive damages for subscription fees, loss of interest on the funds that were withheld, and all other losses and expenses incurred, in the amount that the jury may determine fair and reasonable under the laws.

52.     Putative class members are still owed and would use services in the future which entitles them to preliminary and permanent injunctive relief.

## CLASS ACTION ALLEGATIONS

53.     Plaintiff brings this class action on behalf of itself and Class Members pursuant to Rule 23 of the Federal Rules of Civil Procedure.

54.     Plaintiff seeks to represent a national "Flipcause Class" defined as follows:

9

COMPLAINT

All United States-based nonprofits, individuals, and business entities, who are or were Account Holders and users of Flipcause between November 1, 2022 and the date of judgment in this action, excluding Defendants, Defendants' officers, directors, and employees, Defendants' subsidiaries, the Judge to which this case is assigned and the immediate family of the Judge to which this case is assigned.

55.    Plaintiff reserves the right to re-define any of the Class definitions prior to class certification or thereafter, including after having the opportunity to conduct discovery.

56.    Plaintiff is a member of the putative class that they seek to represent.

57.    The definition of the putative class is narrowly tailored to include Account Holders who can be identified through Defendants' database for the discrete period of time through the date of judgment in this action, or from the appropriate statutory limitations period through the date of judgment in this action.

### *F.R.C.P. 23(a)*

58.    The proposed class is so numerous that the individual joinder of all its members, in this or any action, is impracticable. The exact number or identification of the members of the putative class is presently unknown to Plaintiff, but it is believed to comprise tens of thousands of organizations and entities throughout the nation, thereby making joinder impractical.

59.    Common questions of fact and law exist as to all Class Members. These include, but are not limited to, the following:

(a)    Whether the Defendants failed to perform their duty under the contract with Account Holders;

(b)    Whether the representations made by Defendants in their advertisements and in communications with Account Holders were materially misleading to account holders and materially induced them to subscribe to and continue to use Defendants' business;

COMPLAINT

(c) Whether Defendants' conduct resulted in violation of contracts, harm to consumers under various state consumer protection laws; and fraudulent misrepresentations.

(c) Whether Plaintiff and the Class members are entitled to preliminary and permanent injunctions, damages, restitution, equitable relief and other relief deemed appropriate and the amount and nature of such relief.

60.     Plaintiff's claims are typical of the claims of the putative class members. Plaintiff and all putative Class members were subject to the above conduct and misrepresentations made by Defendants and their claims are based on the same legal theories against the Defendants.

61.     The factual bases of Defendants' misconduct are common to the putative Class members, resulting in injury to all putative class members alike. Plaintiff is asserting the same rights, making the same claims, and seeking similar relief for itself and all other putative class members.

62.      Plaintiff is an adequate representative of the proposed class because they are putative class members and do not have interests that conflict with those of the other putative class members they seek to represent.

63.     Plaintiff is represented by experienced and able counsel, who have litigated lawsuits of this complexity, and Plaintiff's Counsel intends to prosecute this action vigorously for the benefit of the proposed class. Plaintiff and its Counsel will fairly and adequately protect the interests of the class members.

### ***Plaintiff's Class Seeks Certification under F.R.C.P. 23(b)(3)***

64.     The central questions of whether Defendants' conduct and misrepresentations violate the terms of their contract with Plaintiff, violate tort laws and state consumer protection laws predominate over all other questions, both legal and factual, in this litigation.

65.     A class action is the superior method available for the efficient adjudication

11

COMPLAINT

of this litigation because: (a) The prosecution of separate actions by individual members of the Class would create a foreseeable risk of inconsistent or varying adjudications which would establish incompatible results and standards for Defendants; (b) Adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their own separate interests; (c) Class action treatment avoids the waste and duplication inherent in potentially thousands of individual actions, and conserves the resources of the courts; and (d) the claims of the individual class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for the members of the Class to individually seek redress for Defendants' wrongful conduct. Even if the members of the Class could afford individual litigation, the court system could not. Moreover, this action is manageable as a class action. Individualized litigation creates potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

### ***Plaintiff's Class Seeks Certification under F.R.C.P. 23(b)(2)***

66.    A class action for injunctive and equitable relief pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate. Defendants acted or refused to act on grounds that are generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole. Defendants' actions are generally applicable to the Class as a whole, and Plaintiff, on behalf of the Class, seeks damages and injunctive relief described herein. Moreover, Defendants' patterned failure to adhere to the contract and various tort and state consumer protection laws forms an appropriate basis for the Class to seek declaratory relief with respect to the Class as a whole.

COMPLAINT

**FIRST CAUSE OF ACTION: CONVERSION**

(Plaintiff Individually and on behalf of a Nation-wide Class Against All Defendants)

67.    Plaintiff adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

68.    Plaintiff brings this claim individually and on behalf of a National class against all Defendants.

69.    Defendants engaged in the tort of common law conversion.

70.    The common law tort of conversion is "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Restatement (Second) of Torts § 222A (1965). The following are considerations in determining the seriousness of the interference and the justice of requiring the actor to pay the full value: (a) the extent and duration of the actor's exercise of dominion or control; (b) the actor's intent to assert a right in fact inconsistent with the other's right of control; (c) the actor's good faith; (d) the extent and duration of the resulting interference with the other's right of control; (e) the harm done to the chattel; (f) the inconvenience and expense caused to the other.

71.    Defendants engaged in conversion when they received payment from funders for Plaintiff and class members and failed to transfer it to them, causing undue delay and harm.

72.    Plaintiff reserves the right to supplement its specifications of conversion as to each of the Defendants after conducting reasonable and necessary discovery.

73.    As a direct and proximate result of the conversion of each of the Defendants, Plaintiff and Class suffered monetary loss, damage to operations of its nonprofit, and continues to suffer financial hardship.

74.    Plaintiff and Class members are therefore entitled to compensatory and punitive damages for every injury cause, to the greatest extent as the jury may determine

13

COMPLAINT

fair and reasonable.

75.    Plaintiff and Class members are entitled to punitive damages for the unfair conversion.

76.    Plaintiff and Class members are entitled to expenses and costs incurred in dealing with the Defendants' conversion.

77.    Plaintiff and Class members are entitled to attorney's fees and reimbursement of all costs as deemed fair and reasonable by the court.

78.    Plaintiff and Putative Class members are still suffering from the ongoing nature of Defendants' conversion and most Class members are still Account Holders which entitles them to preliminary and permanent injunctive relief.

### SECOND CAUSE OF ACTION: FRAUDULENT MISREPRESENTATION
### (Plaintiff individually and on behalf of a National Class Against All Defendants)

79.    Plaintiff adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

80.    Plaintiff brings this claim individually and on behalf of a National class against all Defendants.

81.    Defendants engaged in the tort of common law fraud or fraudulent misrepresentation.

82.    The elements of fraudulent misrepresentation are (1) the defendant made a false representation, (2) in reference to a material fact, (3) that the defendant made with knowledge of its falsity, (4) with an intent to deceive, and (5) reliance was taken based on the representation.

83.    As described in the allegations above, the Defendants' statements about their ability to provide Account Holders with immediate access to funds, transfers within five (5) days, the state of Defendants' financial health and the effort and solutions that are being taken to resolve the issue to transfer funds were false when they made them.

14

COMPLAINT

84.    The Defendants knew that Account Holders would rely on the policies and email communications when subscribing to Defendants' business.

85.    Plaintiff and Class relied upon Defendants' statements when they chose to subscribe to Defendant's business.

86.    In like manner, Plaintiff and Class reasonably relied upon Defendants' emails and communications to carry out their own stated policies and waited for funds to be transferred.

87.    The Defendants' fraudulent misrepresentations proximately caused harm to Plaintiff and Class who suffered compensatory loss, expended effort to deal with Defendants' failure, and suffered major disruptions to the operation of the nonprofit's activities, donor relations, and stakeholder confidence.

88.    Plaintiff and Class members are therefore entitled to compensatory damages for all actual, statutory, and punitive damages to recover pecuniary loss, expenses incurred, and other costs that the jury may determine fair and reasonable.

89.    Plaintiff and Class members are entitled to attorney's fees and reimbursement of all costs as deemed fair and reasonable by the court.

90.    Plaintiff and class members are also entitled to preliminary and permanent injunctive relief for ongoing misrepresentations by Defendants.

## THIRD CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION
### (Plaintiff individually and on behalf of a National Class Against All Defendants)

91.    Plaintiff adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

92.    Plaintiff brings this claim individually and on behalf of a National class against all Defendants.

93.    Defendants committed the tort of negligent misrepresentation elements of which claim are: (1) the defendant made a false statement or omission of a fact, (2) the

COMPLAINT

statement was in violation of a duty to exercise reasonable care, (3) the false statement or omission involved a material issue, (4) the plaintiff reasonably relied and to its detriment relied on the false information, and (5) the defendant's challenged conduct proximately caused injury to the plaintiff.

94.    As described in the allegations above, the Defendants' statements about their ability to provide Account Holders with immediate access to funds, transfers within five (5) days, the state of Defendants' financial health and the effort and solutions that are being taken to resolve the issue to transfer funds were false when they made them.

95.    These false statements violated the Defendants' duty of reasonable care to provide accurate information to their Account Holders who reasonably relied on them.

96.    The Defendants' misrepresentations proximately caused harm to Plaintiff and Class who suffered compensatory loss, expended effort to deal with Defendants' failure, and suffered major disruptions to the operation of the nonprofit's activities, donor relations, and stakeholder confidence.

97.    Plaintiff and Class members are therefore entitled to compensatory damages for all actual, statutory, and punitive damages to recover pecuniary loss, expenses incurred, and other costs that the jury may determine fair and reasonable.

98.    Plaintiff and Class members are entitled to attorney's fees and reimbursement of all costs as deemed fair and reasonable by the court.

99.    Plaintiff and class members are also entitled to preliminary and permanent injunctive relief for ongoing misrepresentations by Defendants.

## FOURTH CAUSE OF ACTION: NEW YORK GENERAL BUSINESS LAW § 349

### (Plaintiff individually and on behalf of a New York Subclass against all Defendants)

100.    Plaintiff restates each and every paragraph of this Complaint as if fully rewritten herein.

16

COMPLAINT

101.   Plaintiff brings this claim on behalf of New York Sub-Class members.

102.   Plaintiff and New York Sub-Class members and Defendants are "persons" under N.Y. Gen. bus. Law § 349(h), the New York Deceptive Acts and Practices Act ("NY DAPA").

103.   Defendants' actions as set forth herein occurred in the conduct of trade or commerce under the NY DAPA.

104.   The NY DAPA makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349.

105.   Defendants' conduct, as set forth above, constitutes deceptive acts or practices under this section, namely: Defendants' statements about their ability to provide Account Holders with immediate access to funds, transfers within five (5) days, the state of Defendants' financial health and the effort and solutions that are being taken to resolve the issue to transfer funds were false when they made them.

106.   Plaintiff and New York Sub-Class members had no way of discerning whether Defendants' representations were false and misleading because Sub-Class members do not have access to Defendants' internal protocols, practice, and operations.

107.   Defendants thus violated the NY DAPA by making false statements that induced reasonable consumers to subscribe to the Defendants' business and continue to wait for their funds to be transferred.

108.   Defendants intentionally and knowingly made affirmative misrepresentations with intent to mislead Plaintiff and New York Sub-Class members.

109.   Defendants knew or should have known that their conduct violated NY DAPA.

110.   Defendants' misrepresentations of their services were material to Plaintiff and Class members.

111.   Defendants' unfair and deceptive acts were likely to, and did in fact, deceive regulators and reasonable consumers, including Plaintiff and Sub-Class members,

COMPLAINT

112.  Plaintiff and New York Sub-Class members relied on the misrepresentations when they subscribed to Defendants' business, which Defendants used to make profit.

113.  Defendants' violations present continuing harm to Plaintiff, New York Sub-Class members, and the general public.

114.  Plaintiff and New York Sub-Class are entitled to all injunctive relief, actual and statutory damages and punitive damages to the extent available under the law, reasonable attorneys' fees and costs, and all other just and appropriate relief available under the NY DAPA.

115.  Defendants' unlawful acts and practices complained of herein affect the public interest.

116.  Plaintiff and New York State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' actions.

117.  Defendants have an ongoing duty to all customers and the public to refrain from unfair and deceptive practices under the NY DAPA. As a result of Defendants' ongoing unlawful acts, Plaintiff and all Class members are suffering ongoing harm.

118.  As a result of the foregoing willful, knowing, and wrongful conduct of Defendants, Plaintiff and Class members have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including but not limited to actual damages or $50, whichever is greater, treble damages up to $1,000, punitive damages to the extent available under the law, reasonable attorneys' fees and costs, an order enjoining Defendants' deceptive and unfair conduct, and all other just and appropriate relief available under the NY DAPA.


**FIFTH CAUSE OF ACTION: NEW YORK GENERAL BUSINESS LAW § 350**

**(Plaintiff individually and on behalf of New York Sub-Class against all Defendants)**

119.  Plaintiff incorporates by reference all allegations in this Complaint and restate

18

them as if fully set forth herein.

120.    Plaintiff brings this claim on behalf of New York State Class members.

121.    Defendants were engaged in the "conduct of business, trade or commerce," within the meaning of N.Y. Gen. Bus. Law § 350, the New York False Advertising Act ("NY FAA").

122.    The NY FAA makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of . . . representations [made] with respect to the commodity . . ." N.Y. Gen. Bus. Law § 350-a.

123.    Defendants caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements and omissions that were untrue or misleading, and that were known by Defendants, or that through the exercise of reasonable care should have been known by Defendants, to be untrue and misleading.

124.    Defendants made numerous material and affirmative misrepresentations and omissions of fact with intent to mislead and deceive consumers as stated in the foregoing section.

125.    Plaintiff and New York Sub-Class are entitled to all injunctive relief, actual and statutory damages and punitive damages to the extent available under the law, reasonable attorneys' fees and costs, and all other just and appropriate relief available under the NY FAA.

## SIXTH CAUSE OF ACTION : CALIFORNIA BUSINESS AND PROFESSIONAL CODE §§17200 & 17500

(Plaintiff individually and on behalf of National Class Against All Defendants)

126.    Plaintiff restates each and every paragraph of this Complaint as if fully

19

COMPLAINT

rewritten herein.

127.   Plaintiff on behalf of a National Class alleges claims under California Business and Professional Code §§17200 & 17500 *et seq*.

128.   Defendants have engaged in unfair competition and prohibited activities.

129.   Unfair competition includes any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by California Bus. & Prof. Code §§17200 and 17500 *et seq*.

130.   Plaintiff and the putative National class seek equitable relief and to enjoin Defendants from engaging in its current practice and scheme of making misrepresentations about their services and guidelines, and enforcement to the detrimental harm of its users.

131.   Pursuant to Cal. Bus. & Prof. Code §17200 and 17500 *et seq*., Plaintiff and the putative National class seek an order enjoining the above-described wrongful acts and practices of the Defendants and for restitution and disgorgement.

## SEVENTH CAUSE OF ACTION : BREACH OF CONTRACT
### (Plaintiff individually and on behalf of a National Class Against All Defendants)

132.   Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

133.   Plaintiff and Defendants were parties to a contract and agreement whereby Defendants promised to transfer funds received by donors to Plaintiff within 1-5 business days.

134.   As alleged in the foregoing sections, Defendants breached the contract by failing to process payment of funds to Plaintiff and Class per their contract.

135.   Therefore, Plaintiff is entitled to compensatory damages resulting from the breach of contract. Plaintiff, individually, and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

COMPLAINT

136.    Plaintiff, individually, and on behalf of all others similarly situated, adopt and incorporate by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

## **EIGHTH CAUSE OF ACTION : UNJUST ENRICHMENT**

(Plaintiff individually and on behalf of National Class Against All Defendants)

137.    Plaintiff, and the putative National class, conferred a tangible economic benefit upon Defendants by subscribing to Defendants' business as an account holder.

138.    Through the profits gained by Plaintiff's subscription fees, transaction fees on all funds received by Plaintiff, Defendants reaped millions of dollars of profit and investments from its unfair practices, misrepresentations and deceptive trade practices. Defendants specifically represented that Account Holders would have immediate access to funds and that the funds would be transferred to Account Holders' banks within five (5) days. Instead, Defendants were enriched by their misrepresentations. Plaintiff suffered monetary harm as a result.

139.    Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiff and members of the putative national class.

140.    It would thus be unjust and inequitable for Defendants to retain the benefit reaped from Plaintiff and National Class members without restitution or disgorgement of valuable goods (e.g., transaction fees, subscription fees, etc.) provided to Defendants, or such other appropriate equitable remedy as appropriate, to the Plaintiff and other members of the putative National class.

## **NINTH CAUSE OF ACTION : INJUNCTIVE RELIEF**

(Plaintiff individually and on behalf of a National Class Against All Defendants)

141.    Plaintiff, individually, and on behalf of all others similarly situated, adopts

COMPLAINT

and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

142.    Defendants have refused to act on grounds generally applicable to the injunctive relief sought by Plaintiff and other members of the putative class and subclass, thereby making preliminary and permanent injunctive relief appropriate.

143.    Defendant's conduct of withholding funds from Plaintiff and Class are jeopardizing the operations of Plaintiff and causing immediate harm to Plaintiff and Class.

144.    If Defendants continue with these practices, consumers, including the Plaintiff and Class will be irreparably harmed in that they do not have a plain, adequate, speedy, or complete remedy at law to address all of the wrongs alleged in this Complaint, unless injunctive relief is granted to stop Defendants' improper conduct.

145.    Plaintiff and the putative National class and Sub-classes are therefore, entitled to a preliminary and permanent injunction requiring Defendants to immediately transfer funds owed to Plaintiff and class as well as all compensatory losses suffered by Plaintiff and Class.

## **PRAYER FOR RELIEF**

WHEREFORE, the putative representative Plaintiff, on behalf of themselves and the putative members of the class defined herein prays for judgment against the Defendants as follows:

A. For an order certifying this action and/or common issues raised herein as a "Class Action under the appropriate provision of Federal Rule of Civil Procedure 23(a), 23(b)(2) and/or (b)(3); designating Class Representatives; and appointing the undersigned to serve as class counsel.

B. For notice of class certification and of any relief to be disseminated to all Class Members and for such other further notices as this Court deems appropriated under Fed. R. Civ. P. 23(d)(2);

COMPLAINT

C. For an order barring Defendants from destroying or removing any computer or similar records which record evidence related to the claims above.

D. For an order barring Defendants from attempting, on their own or through their agents, to induce any putative Class Members to sign any documents which in any way releases any of the claims of any Putative Class Members;

E. For and order granting declaratory and preliminary and permanent injunctive relief to Plaintiff as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, all plaintiff and class members and pay them, restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by the Court to be wrongful;

F. For an award of compensatory damages in the amount exceeding $5,000,000, to be determined by proof of all injuries and damages described herein and to be proven at trial;

G. Awarding Plaintiff and the National Class and Sub-Class members appropriate relief, including actual and statutory damages;

H. Awarding Plaintiff, the National Class and Sub-Class members punitive damages to the extent allowable by law, in an amount to be proven at trial;

I. Awarding restitution and disgorgement of Defendants' revenues to the Plaintiff and the proposed Class and Sub-Class members;

J. Ordering Defendants to change their misrepresentations and engage in a corrective advertising campaign;

K. Awarding Plaintiff and the Class reasonable attorney's fees and costs of prosecuting this action, including expert witness fees;

L. Awarding pre-judgment and post-judgment interest; and

M. Providing such other relief as may be just and proper.

COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiff individually and on behalf of the putative class hereby demand a trial by jury for all issues a jury may properly decide and for all of the requested relief that a jury may award.

Dated: October 21, 2025

Respectfully submitted,

By:

_____

Juyoun Han, Esq. (*Pro hac vice* forthcoming)
Eric Baum, Esq. (*Pro hac vice* forthcoming)
**EISENBERG & BAUM, LLP**
24 Union Square East, PH
New York, NY 10003
jhan@eandblaw.com
ebaum@eandblaw.com

John K. Buche (SBN 239477) (Local Counsel)
Byron Ma (SBN 299706) (Local Counsel)
THE BUCHE LAW FIRM, P.C.
901 S MoPac Expy, Bldg. 1, Ste. 300
Austin, TX 78746
Tel: (512) 215-4997
jbuche@buchelaw.com
bma@buchelaw.com

*Attorneys for Plaintiff*
*The Latino Medical Student Association-Northeast*

24

COMPLAINT