Juyoun Han (*pro hac vice*)
Eric Baum (seeking application for *pro hac vice*)
EISENBERG & BAUM, LLP
24 Union Square East, PH
New York, NY 10003
Tel: (212) 353-8700
Fax: (212) 353-1708

John K. Buche (SBN 239477) (Local Counsel)
Byron Ma (SBN 299706) (Local Counsel)
THE BUCHE LAW FIRM, P.C.
901 S MoPac Expy, Bldg. 1, Ste. 300
Austin, TX 78746
Tel: (512) 215-4997
jbuche@buchelaw.com
bma@buchelaw.com

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| THE LATINO MEDICAL STUDENT ASSOCIATION-NORTHEAST, et al. <br><br> *On behalf of themselves and all others similarly situated,* <br><br><br> *Plaintiff,* <br><br> v. <br><br> FLIPCAUSE, INC., EMERSON VALIAO, and SEAN WHEELER, <br><br> *Defendants.* | Civil Action No.: **25-cv-09047** <br><br><br> **FIRST AMENDED COMPLAINT [PUTATIVE CLASS ACTION]** <br><br> **DEMAND FOR JURY TRIAL** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................1

PARTIES...........................................................................................................2

JURISDICTION AND VENUE .............................................................................6

FACTUAL ALLEGATIONS ................................................................................6

CLASS ACTION ALLEGATIONS .....................................................................19

FIRST CAUSE OF ACTION: CONVERSION ....................................................22

SECOND CAUSE OF ACTION: FRAUDULENT MISREPRESENTATION .............24

THIRD CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION ....................25

FOURTH CAUSE OF ACTION : BREACH OF CONTRACT ..................................26

FIFTH CAUSE OF ACTION : UNJUST ENRICHMENT........................................27

SIXTH CAUSE OF ACTION : INJUNCTIVE RELIEF ..........................................28

SEVENTH CAUSE OF ACTION: NEW YORK GENERAL BUSINESS LAW § 349 .29

EIGHTH CAUSE OF ACTION: NEW YORK GENERAL BUSINESS LAW § 350.....31

NINTH CAUSE OF ACTION : CALIFORNIA BUSINESS AND PROFESSIONAL
CODE §§17200 & 17500....................................................................................32

TENTH CAUSE OF ACTION : COLORADO CONSUMER PROTECTION ACT,
*COLO. REV. STAT. §§ 6-1-101, ET SEQ.*  ........................................................33

ELEVENTH CAUSE OF ACTION : MINNESOTA UNIFORM DECEPTIVE TRADE
PRACTICES ACT. *Minn. Stat. §§ 325D.43, et seq.* .........................................34

TWELFTH CAUSE OF ACTION : PENNSYLVANIA UNFAIR TRADE PRACTICES
AND CONSUMER PROTECTION LAW, 73 Pa. Cons. Stat. §§ 201-2 & 201-3, et seq.
.....................................................................................................................36

THIRTEENTH CAUSE OF ACTION : OREGON UNLAWFUL TRADE PRACTICES
ACT, *Or. Rev. Stat. §§ 646.608, et seq*............................................................37

FOURTEENTH CAUSE OF ACTION : ILLINOIS CONSUMER FRAUD AND
DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS §§ 505, et seq.*)*......................39

FIFTEENTH CAUSE OF ACTION: MISSOURI MERCHANDISE PRACTICES ACT,
*Mo. Rev. Stat. §§ 407.010, et seq.* ..................................................................40

SIXTEENTH CAUSE OF ACTION: Connecticut Unfair Trade Practices Act, C.G.S.A. §
42-110g ..........................................................................................................42

i

SEVENTEENTH CAUSE OF ACTION: TENNESSEE CONSUMER PROTECTION ACT (T. C. A. § 47-18-101, et seq.) ...................................................................44

EIGHTEENTH CAUSE OF ACTION: WASHINGTON CONSUMER PROTECTION ACT (WASH. REV. CODE ANN. § 19.86.010, *ET SEQ.*) ..............................................45

NINETEENTH CAUSE OF ACTION: NORTH CAROLINA UNFAIR TRADE PRACTICES ACT, N.C. Gen. Stat. Ann. §§ 75-1.1, et seq. ..............................................47

TWENTIETH CAUSE OF ACTION: FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, *Fla. Stat. §§ 501.201, et seq*..............................................48

TWENTY-FIRST CAUSE OF ACTION: ARIZONA CONSUMER FRAUD ACT, A.R.S. §§ 44-1521, et seq. ..............................................................................49

TWENTY-SECOND CAUSE OF ACTION: IOWA PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUDS ACT, Iowa Code § 714H ..........................................51

PRAYER FOR RELIEF..............................................................................................52

DEMAND FOR JURY TRIAL ..................................................................................54

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

1.      This action arises from a nationwide scheme by fundraising platform Flip Cause, Inc. and its executives ("Flipcause") to defraud and systematically deprive non-profit organizations of the very funds they raised for their charitable missions. Flipcause holds itself out as a "one-stop platform" for non-profits ("Account Holders"), promising immediate access to donated funds and transfers within 1-5 business days. In reality, Flipcause created a financial nightmare for the thousands of charities that entrusted it with their donations.

2.      Plaintiff The Latino Medical Student Association-Northeast ("LMSA-NE"), a 501(c)(3) non-profit dedicated to supporting Latino medical students, is one such victim. As of the filing of this complaint, Flipcause is unlawfully withholding over $75,000 in funds belonging to LMSA-NE, providing only evasive and canned responses to LMSA-NE's repeated demands for its own funds. This has materially harmed LMSA-NE's mission, forcing it to drain its savings and jeopardizing its ability to host medical conferences for thousands of students.

3.      Additional Plaintiffs join this Complaint: Athens Area Diaper Bank; Black Girls Smile Inc.; Canine Lymphoma Education Awareness and Research; the Chicago Coalition for Family Building; East Grand Community Services; Friends of Manual High School Inc.; Kittyland Cat & Kitten Rescue; MS President US, Inc.; Recycling Association of Minnesota; SOFESA; Soldiers and Families Embraced; Team Sunshine Performance; United States Submarine Veterans' Charitable Foundation; Cuttyhunk Yacht Club; Keeping Our Promise Inc.; Garden of Peace; the Washington State Crime Prevention Association; The Hunger Coalition of Transylvania County; Sahiyo U.S. Inc.; Angels for Change, Inc; Tucson Pops Orchestra; Ukraine Orphan Outreach; Meals for Good, Inc.; National Association of State Trust Lands; West Liberty Youth Dream Catchers Inc.; Trees For The Triangle; the American Criminal Justice Association; and the Torch Foundation.

1

4.     A mountain of evidence reveals a clear and disturbing pattern of Flipcause withholding hundreds of thousands of dollars from non-profits and charities across the country. While non-profits have been forced to suspend operations, lay off staff, and default on obligations, Defendants issued misleading public statements blaming "cash flow bottlenecks" while insisting the company remains "healthy." Meanwhile, Plaintiffs were informed that Flipcause is making effort to be acquired, while its Account Holders' funds are being held at ransom and while its representations to Account Holders are known to be false.

5.     This lawsuit seeks to hold Flipcause and its leadership accountable for their misrepresentations and wrongful conduct and to recover the millions of dollars in charitable funds they are unlawfully withholding from Plaintiffs and the entire class of similarly situated organizations.

## **PARTIES**

6.     At all relevant times, Plaintiff the Latino Medical Student Association-Northeast ("LMSA-NE") is a 501(c)(3) non-profit, headquartered in New York and affiliated with the National Latino Medical Student Association. As a result of Defendants' legal violations, Plaintiff has suffered injury in fact. Plaintiff brings this action on behalf of themselves and all others similarly situated.

7.     The below listed Plaintiffs are also non-profit organizations or charitable funds who have suffered injury in fact due to Defendant's alleged violations. Each of the below plaintiffs brings this action on behalf of themselves and others similarly situated as members of the class or subclasses as specified in the causes of actions alleged herein.

8.     At all relevant times, Plaintiff Athens Area Diaper Bank has a principal place of business in Georgia.

9.     At all relevant times, Plaintiff Black Girls Smile Inc. has a principal place of business in Georgia.

2

10.    At all relevant times, Plaintiff Canine Lymphoma Education Awareness and Research has a principal place of business in California. This Plaintiff seeks to represent itself and the California Subclass.

11.    At all relevant times, Plaintiff Chicago Coalition for Family Building has a principal place of business in Illinois. This Plaintiff seeks to represent itself and the Illinois Subclass.

12.    At all relevant times, Plaintiff East Grand Community Services has a principal place of business in Missouri. This Plaintiff seeks to represent itself and the Missouri Subclass.

13.    At all relevant times, Plaintiff Friends of Manual High School Inc. has a principal place of business in Colorado. This Plaintiff seeks to represent itself and the Colorado Subclass.

14.    At all relevant times, Plaintiff Kittyland Cat & Kitten Rescue has a principal place of business in California. This Plaintiff seeks to represent itself and the California Subclass.

15.    At all relevant times, Plaintiff MS President US, Inc. has a principal place of business in Connecticut. This Plaintiff seeks to represent itself and the Connecticut Subclass.

16.    At all relevant times, Plaintiff Recycling Association of Minnesota has a principal place of business in Minnesota. This Plaintiff seeks to represent itself and the Minnesota Subclass.

17.    At all relevant times, Plaintiff SOFESA has a principal place of business in California. This Plaintiff seeks to represent itself and the California Subclass.

18.    At all relevant times, Plaintiff Soldiers and Families Embraced is a 501(c)(3) non-profit and has a principal place of business in Tennessee. This Plaintiff seeks to represent itself and the Tennessee Subclass.

3

19.     At all relevant times, Plaintiff Team Sunshine Performance has a principal place of business in Pennsylvania. This Plaintiff seeks to represent itself and the Pennsylvania Subclass.

20.     At all relevant times, Plaintiff United States Submarine Veterans' Charitable Foundation is headquartered in Connecticut. This Plaintiff seeks to represent itself and the Connecticut Subclass.

21.     At all relevant times, Plaintiff Cuttyhunk Yacht Club has a principal place of business in Massachusetts.

22.     At all relevant times, Plaintiff Keeping Our Promise Inc. has a principal place of business in New York. This Plaintiff seeks to represent itself and the New York Subclass.

23.     At all relevant times, Plaintiff Garden of Peace, Inc. has a principal place of business in Oregon. This Plaintiff seeks to represent itself and the Oregon Subclass.

24.     At all relevant times, Plaintiff Washington State Crime Prevention Association has a principal place of business in Washington. This Plaintiff seeks to represent itself and the Washington Subclass.

25.     At all relevant times, Plaintiff the Hunger Coalition of Transylvania County has a principal place of business in North Carolina. This Plaintiff seeks to represent itself and the North Carolina Subclass.

26.     At all relevant times, Plaintiff Sahiyo U.S. Inc. (previously operating under fiscal sponsor) currently has a principal place of business in Massachusetts.

27.     At all relevant times, Plaintiff Angels for Change, Inc. has a principal place of business in Florida. This Plaintiff seeks to represent itself and the Florida Subclass.

28.     At all relevant times, Plaintiff Tucson Pops Orchestra has a principal place of business in Arizona. This Plaintiff seeks to represent itself and the Arizona Subclass.

29.     At all relevant times, Plaintiff Ukraine Orphan Outreach has a principal place

4

of business in Colorado. This Plaintiff seeks to represent itself and the Colorado Subclass.

30. At all relevant times, Plaintiff Meals for Good, Inc. has a principal place of business in New York. This Plaintiff seeks to represent itself and the New York  Subclass.

31. At all relevant times, Plaintiff National Association of State Trust Lands has a principal place of business in Arizona. This Plaintiff seeks to represent itself and the Arizona Subclass.

32. At all relevant times, Plaintiff West Liberty Youth Dream Catchers has a principal place of business in Iowa. This Plaintiff seeks to represent itself and the Iowa Subclass.

33. At all relevant times, Plaintiff Trees for the Triangle has a principal place of business in North Carolina. This Plaintiff seeks to represent itself and the North Carolina Subclass.

34. At all relevant times, Plaintiff American Criminal Justice Association has a principal place of business in Texas.

35. At all relevant times, Plaintiff Torch Foundation has a principal place of business in California. This Plaintiff seeks to represent itself and the California Subclass.

36. Defendant Flipcause, Inc. ("Flipcause") is a for-profit Delaware Corporation with its principal place of business in Oakland, California, doing business in California as Flipcause, Inc.

37. Defendant Emerson Valiao was the founding CEO of Flipcause from and during relevant times of the events that occurred in this lawsuit.

38. Defendant Sean Wheeler is the CEO of Flipcause.

39. Plaintiff further alleges that each and all of the Defendants (Valiao, Wheeler, and Flipcause, collectively, "Defendants" hereinafter) are directly liable and/or vicariously, jointly and severally liable for the violations of consumer protection laws, breach of contract, and violation of tort law claims alleged herein.

5

40.     Upon information and belief, Defendants' conduct directly affects thousands of Flipcause's Account Holders to whom each Defendant owes a legal duty and to whom each Defendant is directly responsible for damages and the injuries caused.

## JURISDICTION AND VENUE

41.     This Court has diversity jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interest and costs, exceeds $5,000,000 and is a class action in which some members of the class are citizens of states different from the states where Defendants are citizens.

42.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District as Defendants are: (a) authorized to conduct business in this District and has intentionally availed itself to the laws and markets within this District through the promotion, marketing, distribution and sale of its products in this District; (b) currently conducting substantial business in this District; and (c) are subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

43.     Flipcause is a fundraising and donor-management software platform marketed for small businesses and nonprofit organizations.

44.     Starting in 2012 as a fundraising platform, Flipcause has grown to become a "one-stop platform where groups could manage donors, register event attendees, recruit volunteers, sell products with an online store, and accept donations."[1]

45.     Upon information and belief, more than 10,000 nonprofit organizations use (or have used) Flipcause during all relevant times.

46.     Flipcause's Terms and Conditions states: "If you possess a Flipcause Account

---

[1] https://oaklandvoices.us/2025/09/11/flipcause-delayed-donation-transfers-nonprofits/.

Balance, the total amount of your Account Balance is considered a financial asset wholly owned, received, and controlled by you, the Account Holder, and is a financial obligation to be paid to you, the Account Holder by Flipcause. Flipcause will pay funds owed to you using an ACH-enabled, non-interest bearing account ("Settlement Fund") in Flipcause's name, owned by Flipcause, and registered through a 3rd party financial institution that is part of the Federal Deposit Insurance Corporation ("FDIC") insurance program. Users consent to the management and operation of the Settlement Fund by Flipcause to perform activities related to the operation of Flipcause, Flipcause Account Holders, Fundraisers, or Supporters, including processing Transfers, issuing refunds, or other activities. Account Holders will have a full claim as a creditor to the funds owed to them by Flipcause. Account Holders will not receive interest or other earnings on the amounts in their Flipcause Account Balances." [2]

47.    Flipcause's Terms and Conditions state that transfers take 1-5 business days,[3] and on their website.

48.    Flipcause advertises "As soon as a transaction is processed, the funds are in your account and available for transfer. You control when and how much you transfer – no waiting 30 days for a payout."[4]

49.    Flipcause charges a per "Transaction Fee" equivalent to 6.9% + 30 cents for all web payments to its clients or their donors which is applied to every donation, order, payment, invoice. It also charges its clients yearly subscription of $1500-$2400 dollars for their services.

50.    Upon information and belief, in the past two (2) years to date, Flipcause

---

[2] Flipcause, Terms and Conditions § 17.1, Flipcause (last updated Sept. 3, 2024), https://flipcause.org/terms/
[3] *Id.* at 17.3.
[4] Flipcause, Payment Processing, Flipcause (last visited Oct. 17, 2025), https://flipcause.org/payment-processing/.

Account Holders have experienced delays in receiving payments.

51.    From 2018 until 2025, LMSA-NE had purchased and subscribed to Flipcause paid an annual subscription fee.[5]

52.    On August 10, 2025, LMSA-NE requested transfer of funds from its Flipcause account to LMSA-NE's bank account associated with Flipcause. The first request was in the amount of $50,000.00 and the second request was in the amount of $25,223.71. Flipcause has not fulfilled this request.

53.    Throughout September 2025, LMSA-NE reached out to Flipcause notifying them of the un-fulfilled fund transfer request.

54.    Flipcause sent an email with the following canned responses:

- "I will follow up with you once I hear back from our ACH provider and will provide a date on when you will receive your funds. Please be assured we will get this resolved and have your funds expedited as soon as possible."

- "We are reviewing the request with our ACH service to confirm the status and processing of your requests. We'll follow up with confirmation as soon as possible."

- "I'm pushing to get you an immediate update on the release of your $75,223.71. I'll also make sure you receive a full accounting of donations and disbursements tied to your account."

55.    LMSA-NE relied on these representations and waited for responses, and as a result, had to suffer monetary loss by having to retrieve funds from their interest-bearing savings account due to Flipcause's misrepresentation(s) while continuing to withhold funds.

---

[5] In 2018, the transaction fee and annual subscription fee offered to LMSA-NE was 4.9%+30 cents and $1200 per year.

56.   Flipcause has not followed up with the status of LMSA-NE's pending fund transfer request.

57.   To date, Flipcause has not furnished any explanation about the delay, nor an accounting of the donations and disbursements of LMSA-NE's account.

58.   To date, Flipcause is unlawfully withholding $75,223.71 of funds rightfully belonging to LMSA-NE.

59.   On September 22, 2025, LMSA-NE reached out to Flipcause to cancel its subscription with Flipcause. The cancellation process includes the transfer of funds, but this has not happened. "Transferring Your Account Balance . . . Once your account is ready for closure, an admin with the necessary permissions can complete the final transfer of any remaining funds in the Account Balance."

60.   The cost of transition includes changing to a new service, notifying existing donors and patrons which creates loss, friction, and confusion, and unpublishing of the Account Holder's website which requires a new website to be built.

61.   The protracted withholding of the Plaintiff's funds by Defendants incurs continuing loss of interest and depreciation of money, which could have been transferred to interest-bearing accounts or other assets.

62.   LMSA-NE incurred the discontinuity of services, loss, friction, and confusion to donors, and staff time due to Flipcause's actions. LMSA-NE also incurred out-of-pocket costs in transitioning to a new donor payment service and building a new website, that amounts to $1,474.20.

63.   The withholding of these funds has caused injury-in-fact and materially harmed Plaintiff's ability to make time-sensitive deposits for regional medical conferences involving thousands of students and dozens of medical schools and residency programs.

64.    Flipcause's continued delay has harmed LMSA-NE's mission, limiting Plaintiff's ability to support Latino medical students, and undermining trust with medical

9

schools, students, and our partners including the National Latino Medical Student Association.

65.     LMSA-NE is not the only entity reporting chronic failures by Flipcause to transfer funds to Account Holders.

66.     Plaintiff Athens Area Diaper Bank (AADB) had been a subscribed account holder at Flipcause since 2019, and has paid subscriptions of $1,400 annually. Since 2023, AADB has made transfer requests to Flipcause that were met with protracted delays exceeding 10 days. To date, the transfer request of $14,790.31 has been unfulfilled. Consequently, AADB has expended staff and resources to address these delays, and now migrated to a new platform incurring out-of pocket costs. In migrating to a new payment processing platform, AADB lost recurring donations.

67.     Plaintiff Black Girls Smile Inc. (BGS) had been a subscribed account holder at Flipcause for the past three years, and has paid subscriptions of $1,200 annually. Since June 2025, BGS has made transfer requests to Flipcause that were met with protracted delays exceeding 10 days. To date, the transfer request of $29,096.60  has been unfulfilled. Consequently, BGS has expended staff and resources to address these delays, and now migrated to a new platform incurring out-of pocket costs. BGS had to halt campaigns and lost recurring donations. BGS also had to take out loans with interest rates in order to pay its staff members.

68.     Plaintiff Canine Lymphoma Education Awareness and Research (CLEAR) had been a subscribed account holder at Flipcause since 2019 and has paid subscriptions of $1200 annually. Since November 2024, CLEAR has made transfer requests to Flipcause that were met with protracted delays exceeding 10 days. To date, the transfer request of $13,021.95 has been unfulfilled. Consequently, CLEAR has expended staff and resources to address these delays, and has suffered loss of donations as a result of the delays.

69.     Plaintiff Chicago Coalition for Family Building (CCFB) had been a

10

subscribed account holder at Flipcause since 2016, and has paid subscriptions of $780 annually. Since 2023, CCFB has made transfer requests to Flipcause that were met with protracted delays exceeding 10 days. To date, the transfer request of $88,292.46 has been unfulfilled. Consequently, CCFB has expended staff and resources to address these delays, retained professionals to handle the dispute, and lost funds and interest on funds.

70.    Plaintiff East Grand Community Services (EGCS) has been a subscribed account holder at Flipcause since 2020, and has paid subscriptions of $1200 annually. Since October 2023, EGCS has made transfer requests to Flipcause that were met with protracted delays exceeding 10 days. To date, the transfer request of $4,437.46  has been unfulfilled. Consequently, EGCS has expended staff and resources to address these delays, lost donors and lost interest on funds.

71.    Plaintiff Friends of Manual High School Inc. (FOM) had been a subscribed account holder at Flipcause for the past , and has paid subscriptions of $1200 annually. Since April 2025, FOM has made transfer requests to Flipcause that were met with protracted delays exceeding 10 days. To date, the transfer request of $39,837.16  has been unfulfilled. Consequently, FOM has expended staff and resources to address these delays, and had to halt operations.

72.    Plaintiff Kittyland Cat & Kitten Rescue (KCKR) had been a subscribed account holder at Flipcause for the past 12, and has paid subscriptions of $1000 annually. Since January 2025, KCKR has made transfer requests to Flipcause that were met with protracted delays exceeding 10 days. To date, the transfer request of $20,089.71 has been unfulfilled. Consequently, KCKR has expended staff and resources to address these delays by writing emails and filing complaints.

73.    Plaintiff Ms President US (MSPUS) had been a subscribed account holder at Flipcause since September 2020. and has paid subscriptions of $1200 annually. Since a few years ago, MSPUS has made transfer requests to Flipcause that were met with

*LMSA-NE et al. v. FLIPCAUSE, INC.* et al.– FIRST AMENDED COMPLAINT
25-cv-09047

protracted delays exceeding 10 days. To date, the transfer request of $19,390.00 has been unfulfilled. Consequently, MSPUS has expended staff and resources to address these delays, and migrated to a new platform incurring out-of pocket costs.

74.    Plaintiff Recycling Association of Minnesota (RAM) had been a subscribed account holder at Flipcause since December 2024, and has paid subscriptions of $2400 annually. Since summer of 2025, RAM has made transfer requests to Flipcause that were met with protracted delays exceeding 10 days. To date, the transfer request of $17,057.73 has been unfulfilled. Consequently, RAM has expended resources to address these delays, paid funds out of pocket to migrate to a new platform, faced hardship in paying vendors for an annual conference, staff, and suffered from low cash flow.

75.    Plaintiff SOFESA had been a subscribed account holder at Flipcause since 2019, and has paid subscriptions of $50 annually. Since on or around August of 2025 SOFESA has made transfer requests to Flipcause that were met with protracted delays exceeding 10 days. To date, the transfer request of $660 has been unfulfilled. Consequently, SOFESA faced hardship of not being able to pay bills or staff.

76.    Plaintiff Soldiers and Families Embraced (S&FE) had been a subscribed account holder at Flipcause since 2017 and has paid subscriptions of $1080 annually. Since August 2025, S&FE has made transfer requests to Flipcause that were met with protracted delays exceeding 10 days. To date, the transfer request of $15,471.78 has been unfulfilled. Consequently, S&FE has lost donors and prevented from serving as much clients.

77.    Plaintiff Team Sunshine Performance (TSP) had been a subscribed account holder at Flipcause since 2019, and has paid subscriptions of $1200 annually. Since a few years ago, TSP has made transfer requests to Flipcause that were met with protracted delays exceeding 10 days. To date, the transfer request of $5,120.00 has been unfulfilled. Consequently, TSP has expended significant staff and resources to address these delays, migrated to a new platform and CRM, and face tax implications due to funds being

12

withheld throughout fiscal years.

78.    Plaintiff US Submarine Veterans Charitable Foundation (USSVCF) has been a subscribed account holder at Flipcause for the past five years, and has paid subscriptions of $1500 annually. Since March 2025, USSVCF has made transfer requests tto Flipcause that were met with protracted delays exceeding 10 days. To date, the transfer request of $21,200.90 has been unfulfilled. Consequently, USSVCF has expended staff and resources to address these delays, migrated to a new platform incurring out-of pocket costs, and lost investment and interest income.

79.    Plaintiff Cuttyhunk Yacht Club (CYC) has been a subscribed account holder at Flipcause since December 2023 and has paid subscriptions of $2400 to begin with, and $1500 annually. Since February 2025, CYC has made transfer requests to Flipcause that were met with protracted delays exceeding 10 days. To date, the transfer request of $47,712.33 has been unfulfilled. Consequently, CYC has expended significant staff and resources to address these delays, and now migrated to a new platform incurring out-of pocket costs.

80.    Plaintiff Keeping Our Promise (KOP) has been a subscribed account holder at Flipcause from August 2020 until now and has paid subscriptions of $50 per month. Since 2025, Keeping Our Promise has made transfer requests to Flipcause that were met with protracted delays exceeding 10 days. To date, the transfer request of $51,198.38 has been unfulfilled. Consequently, KOP has expended staff and resources to address these delays and incurred out-of-pocket costs.

81.    Plaintiff Garden of Peace (GOP) has been a subscribed account holder at Flipcause since July 2024 and has paid subscriptions of $1200 to $1500 annually. Since August 2025, GOP has made transfer requests to Flipcause that were met with protracted delays exceeding 10 days. To date, the transfer request of $4,191.05 has been unfulfilled, although in the past $30,000 had been withheld. Consequently, GOP has expended staff

13

and resources to address these delays, had to lay off staff, faced eviction, and incurred out of pocket expenses while having to halt operations.

82. Plaintiff Washington State Crime Prevention Association (WSCPA) has been a subscribed account holder at Flipcause since 2018, and has paid subscriptions of $1200 annually. Since August 2025, WSCPA has made transfer requests to Flipcause that were met with protracted delays exceeding 10 days. To date, the transfer request of $25,689.00 has been unfulfilled. Consequently, WSCPA has expended staff and resources to address these delays by filing complaints and email correspondence, and have been delayed paying for deposits for upcoming events which has deterred the organization's mission.

83. Plaintiff Hunger Coalition of Transylvania County (HCT) has been a subscribed account holder at Flipcause for the past three years and has paid subscriptions of $1200 annually. Since July 2024, HCT has made transfer requests to Flipcause that were met with protracted delays exceeding 10 days. To date, the transfer request of $9,380.85 has been unfulfilled. Consequently, HCT has expended staff and resources to address these delays and has lost recurring donors.

84. Plaintiff Sahiyo U.S. Inc. has been a subscribed account holder at Flipcause since 2018, and has paid subscriptions of $50 per month. Since on or around June 2025, Sahiyo has made transfer requests to Flipcause that were met with protracted delays exceeding 10 days. After months of delay, the transfers have been completed on November 10, 2025. However, due to the delays, Sahiyo has expended staff and resources to address these delays, sent demand letters through counsel, and this has harmed its operations.

85. Plaintiff Angels for Change (A4C)  been a subscribed account holder at Flipcause since July 2020, and has paid subscriptions of $1200 annually. Since on or around December 2024, A4C has made transfer requests to Flipcause that were met with protracted delays exceeding 10 days. To date, the transfer request of $72,961.85 has been unfulfilled. Consequently, A4C has expended more than 200 hours of staff and resources

14

to address these delays, and incurred out-of pocket costs in migrating to a new payment processing platform, had to halt donation campaigns, and lost recurring donations.

86.    Plaintiff Tucson Pops Orchestra (TPO) has been a subscribed account holder at Flipcause since 2017, and has paid subscriptions of $1200 annually. Since on or about 12 months ago, TPO has made transfer requests to Flipcause that were met with protracted delays exceeding 10 days. To date, the transfer request of $8,391.25 has been unfulfilled. Consequently, TPO has expended staff and resources to address these delays, and migrated to a new platform incurring out-of pocket costs, and had to dip into endowment funds to meet payroll obligations.

87.    Plaintiff Ukraine Orphan Outreach (UOO) has been a subscribed account holder at Flipcause for more than 5 years, and has paid subscriptions of $1200 annually. Since on or about April of 2025, UOO has made transfer requests to Flipcause that were met with protracted delays exceeding 10 days. To date, the transfer request of $20,344.27 has been unfulfilled. Consequently, UOO has expended staff and resources to address these delays including sending demand letters and had to halt important operations such as donations for the winter season for serving refugee children and single moms.

88.    Plaintiff Meals for Good Inc. (M4G) has been a subscribed account holder at Flipcause for the past four years, and has paid subscriptions of $2000 annually. Since October of 2025, M4G has made transfer requests to Flipcause that were met with protracted delays exceeding 10 days. To date, the transfer request of $27,240.83 has been unfulfilled. Consequently, M4G has expended staff and resources to address these delays via email correspondence and its mission to provide food for those suffering from hunger has been frustrated.

89.    Plaintiff National Association of State Trust Lands (NASTL) has been a subscribed account holder at Flipcause since 2018, and has paid subscriptions of $1200 annually. Since April 2023, NASTL has made transfer requests to Flipcause that were met

15

with protracted delays exceeding 10 days. To date, the transfer request of $22,575.15 has been unfulfilled. Consequently, NASTL have suffered out of pocket and consequential losses including expending resources and staff time.

90.    Plaintiff West Liberty Youth Dream Catchers Inc. (WLYDC) has been a subscribed account holder at Flipcause for more than 4 years and has paid subscriptions of $1200 annually. Since May 2025, WLYDC has made transfer requests to Flipcause that were met with protracted delays exceeding 10 days. To date, the transfer request of $14,516.46  has been unfulfilled. Consequently, WLYDC has suffered out of pocket and consequential losses including expending resources and staff time.

91.    Plaintiff Trees for the Triangle (TFTT) has been a subscribed account holder at Flipcause since July 2024 and has paid subscriptions of $200 monthly. Since March 2025, TFTT has made transfer requests to Flipcause that were met with protracted delays exceeding 10 days. To date, the transfer request of $12,964.00 has been unfulfilled. Consequently, TFTT has suffered out of pocket and consequential losses including expending significant resources and staff time, migrating to other platforms for short-term solutions, and loss of donors due to the abrupt change of platforms.

92.    Plaintiff American Criminal Justice Association (ACJA) has been a subscribed account holder at Flipcause since March 2021, and has paid subscriptions of $1200 annually. Since May 2025, ACJA has made transfer requests to Flipcause that were met with protracted delays exceeding 10 days. To date, the transfer request of $30,705.53 has been unfulfilled. Consequently, ACJA has expended staff and resources to address these delays, migrated to a new platform incurring out-of pocket costs and suffered loss of donors.

93.    Plaintiff Torch Foundation (TF) has been a subscribed account holder at Flipcause since September 2021 and has paid subscriptions of $2100 annually. Since September 2025, TF has made transfer requests to Flipcause that were met with protracted

delays exceeding 10 days. To date, the transfer request of $71,431.28 has been unfulfilled. Consequently, TF expended staff time and resources, suffered loss of investment income, and incurred out of pocket costs in migrating to a new platform for fundraising.

94.     Nonprofit leaders have begun submitting complaints to the Better Business Bureau (BBB), and the number of reports filed exceeded 100. BBB has created an alert against Flipcause citing a pattern of complaints regarding the delays and nonresponse. A review of complaints was done in August 2025 by BBB. Complaints indicate significant delays and nonresponse to inquiries about the delayed funds. Each complaint cites thousands of dollars withheld.[6]

95.     Sean Wheeler of Flipcause made a public statement entitled, "Message from the CEO" with a cursory explanation of the issue: "Our credit card settlement system and our ACH settlement system operate differently. Credit card flows have continued normally, but our ACH settlement account has faced daily limits due to cash flow bottlenecks tied to our capital structure. That structural mismatch created a backlog of ACH transfers, even though the Company itself remains healthy. We are in the final stages of resolving this with our partners, and once complete, all pending transfers will be cleared immediately."

96.     Upon information and belief, this statement is untrue. Flipcause is unstable and seeking to be acquired and is at this time unable or unwilling to transfer the funds to the Account Holders.

97.     According to ABC, an employee stated: "Not even we as employees are getting any real answers or timelines on what the (expletive) is going on."[7]

---

[6] Flipcause, Inc., BBB Complaints, Better Business Bureau (Oakland, CA), available at https://www.bbb.org/us/ca/oakland/profile/crowdfunding/flipcause-inc-1116-537273/complaints?sort=recent&status= (last visited Oct. 17, 2025).
[7] Dan Noyes, EXCLUSIVE: Bay Area Company Accused of Mishandling Thousands of Dollars in Nonprofits' Donations, ABC7 (San Francisco), Sept. 13, 2025, https://abc7news.com/post/exclusive-wheres-money-oakland-california-based-company-flipcause-accused-mishandling-nonprofits-donations-us/17809391/.

*LMSA-NE et al. v. FLIPCAUSE, INC.* et al.– FIRST AMENDED COMPLAINT
25-cv-09047

98.    This putative class action demands that Defendants be held liable for violation of the terms and conditions of their contract in which they owed a duty to Plaintiff to transfer funds within 1-5 business days and failed to fulfill the duty. Defendants are liable for all costs and attorneys fees, per the language of the Terms and Conditions: "In any action or proceeding to enforce rights under the Terms and Conditions, the prevailing party will be entitled to recover costs and attorneys' fees."[8]

99.    This putative class action further demands that Defendants be held liable for the tort of conversion of Plaintiffs' property.

100.    This putative class action further demands that Defendants be held liable for misrepresentation where they advertised to Plaintiffs that funds would be available immediately, and later, that Flipcause would provide "an immediate update on the release of your $75,223.71 . . ." and "make sure you receive a full accounting of donations and disbursements tied to your account." These misrepresentations were material and resulted in the injury suffered by Plaintiffs and putative class members.

101.    This putative class action also demands that Flipcause be found liable for misrepresentation when Sean Wheeler represented that there was a "structural mismatch created a backlog of ACH transfers, even though the Company itself remains healthy." These misrepresentations were material and resulted in the injury suffered by Plaintiffs and putative class members.

102.    The same actions of Flipcause stated in preceding paragraphs violate various state consumer protection laws including unfair business practices, misrepresentations, and false advertising.

103.    Due to the above-stated violations, Plaintiffs and putative class are therefore entitled to preliminary and permanent injunctions for immediate transfer of funds owed to

---

[8] Flipcause, Terms and Conditions § 34, Flipcause (last updated Sept. 3, 2024), https://flipcause.org/terms/

*LMSA-NE et al. v. FLIPCAUSE, INC.* et al.– FIRST AMENDED COMPLAINT
25-cv-09047

them, and compensatory and punitive damages for subscription fees, loss of interest on the funds that were withheld, and all other losses and expenses incurred, in the amount that the jury may determine fair and reasonable under the laws.

104.   Putative class members are still owed and would use services in the future which entitles them to preliminary and permanent injunctive relief.

## **CLASS ACTION ALLEGATIONS**

105.   Plaintiffs bring this class action on behalf of itself and Class Members pursuant to Rule 23 of the Federal Rules of Civil Procedure.

106.   Plaintiffs seek to represent a national "Flipcause Class" defined as follows: All United States-based nonprofits, individuals, and business entities, who are or were Account Holders and users of Flipcause between November 1, 2022 and the date of judgment in this action and experienced delays and failure to transfer funds by Flipcause, excluding Defendants, Defendants' officers, directors, and employees, Defendants' subsidiaries, the Judge to which this case is assigned and the immediate family of the Judge to which this case is assigned.

107.   Each Plaintiff also seeks to represent a subclass defined by the state that they reside in, for claims that arise out of state consumer protection statutes where applicable, and the party and state are stated in the Causes of Action Section.

108.   Plaintiffs reserve the right to re-define any of the Class or subclass definitions prior to class certification or thereafter, including after having the opportunity to conduct discovery.

109.   Plaintiffs are a member of the putative class and subclasses that they seek to represent.

110.   The definition of the putative class is narrowly tailored to include Account Holders who can be identified through Defendants' database for the discrete period of time

19

through the date of judgment in this action, or from the appropriate statutory limitations period through the date of judgment in this action.

### *F.R.C.P. 23(a)*

111.   The proposed class is so numerous that the individual joinder of all its members, in this or any action, is impracticable. The exact number or identification of the members of the putative class is presently unknown to Plaintiffs, but it is believed to comprise tens of thousands of organizations and entities throughout the nation, thereby making joinder impractical.

112.   Common questions of fact and law exist as to all Class Members. These include, but are not limited to, the following:

(a)   Whether the Defendants failed to perform their duty under the contract with Account Holders;

(b)   Whether the representations made by Defendants in their advertisements and in communications with Account Holders were materially misleading to account holders and materially induced them to subscribe to and continue to use Defendants' business;

(c)   Whether Defendants' conduct resulted in violation of contracts, and fraudulent misrepresentations.

(d)   Whether Defendants' conduct violated various state consumer protection laws applicable to Plaintiffs' subclasses;

(e)   Whether Plaintiffs and the Class members are entitled to preliminary and permanent injunctions, damages, restitution, equitable relief and other relief deemed appropriate and the amount and nature of such relief.

113.   Plaintiffs' claims are typical of the claims of the putative class members. Plaintiff and all putative Class members were subject to the above conduct and misrepresentations made by Defendants and their claims are based on the same legal

20

theories against the Defendants.

114.   The factual bases of Defendants' misconduct are common to the putative Class members, resulting in injury to all putative class members alike. Plaintiffs are asserting the same rights, making the same claims, and seeking similar relief for itself and all other putative class members.

115.    Plaintiffs are adequate representative of the proposed class because they are putative class members and do not have interests that conflict with those of the other putative class members they seek to represent.

116.   Plaintiffs are represented by experienced and able counsel, who have litigated lawsuits of this complexity, and Plaintiff's Counsel intends to prosecute this action vigorously for the benefit of the proposed class. Plaintiff and its Counsel will fairly and adequately protect the interests of the class members.

### *Plaintiffs' Class Seeks Certification under F.R.C.P. 23(b)(3)*

117.   The central questions of whether Defendants' conduct and misrepresentations violate the terms of their contract with Plaintiffs, violate tort laws and state consumer protection laws predominate over all other questions, both legal and factual, in this litigation.

118.   A class action is the superior method available for the efficient adjudication of this litigation because: (a) The prosecution of separate actions by individual members of the Class would create a foreseeable risk of inconsistent or varying adjudications which would establish incompatible results and standards for Defendants; (b) Adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their own separate interests; (c) Class action treatment avoids the waste and duplication inherent in potentially thousands of individual actions, and conserves the resources of the courts; and (d) the claims of the

21

individual class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for the members of the Class to individually seek redress for Defendants' wrongful conduct. Even if the members of the Class could afford individual litigation, the court system could not. Moreover, this action is manageable as a class action. Individualized litigation creates potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

### *Plaintiffs' Class Seeks Certification under F.R.C.P. 23(b)(2)*

119.    A class action for injunctive and equitable relief pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate. Defendants acted or refused to act on grounds that are generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole. Defendants' actions are generally applicable to the Class as a whole, and Plaintiffs, on behalf of the Class, seeks damages and injunctive relief described herein. Moreover, Defendants' patterned failure to adhere to the contract and various tort and state consumer protection laws forms an appropriate basis for the Class to seek declaratory relief with respect to the Class as a whole.

### FIRST CAUSE OF ACTION: CONVERSION
### (ALL PLAINTIFFS INDIVIDUALLY AND ON BEHALF OF A NATION-WIDE CLASS AGAINST ALL DEFENDANTS)

120.    Plaintiffs adopt and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

121.    Plaintiffs bring this claim individually and on behalf of a National class against all Defendants.

22

122.    Defendants engaged in the tort of common law conversion.

123.    The common law tort of conversion is "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Restatement (Second) of Torts § 222A (1965). The following are considerations in determining the seriousness of the interference and the justice of requiring the actor to pay the full value: (a) the extent and duration of the actor's exercise of dominion or control; (b) the actor's intent to assert a right in fact inconsistent with the other's right of control; (c) the actor's good faith; (d) the extent and duration of the resulting interference with the other's right of control; (e) the harm done to the chattel; (f) the inconvenience and expense caused to the other.

124.    Defendants engaged in conversion when they received payment from funders for Plaintiffs and class members and failed to transfer it to them, causing undue delay and harm.

125.    Plaintiffs reserve the right to supplement its specifications of conversion as to each of the Defendants after conducting reasonable and necessary discovery.

126.    As a direct and proximate result of the conversion of each of the Defendants, Plaintiffs and Class suffered monetary loss, damage to operations of its nonprofit, and continues to suffer financial hardship.

127.    Plaintiffs and Class members are therefore entitled to compensatory and punitive damages for every injury cause, to the greatest extent as the jury may determine fair and reasonable.

128.    Plaintiffs and Class members are entitled to punitive damages for the unfair conversion.

129.    Plaintiffs and Class members are entitled to expenses and costs incurred in dealing with the Defendants' conversion.

130.    Plaintiffs and Class members are entitled to attorney's fees and reimbursement of all costs as deemed fair and reasonable by the court.

131.    Plaintiffs and Putative Class members are still suffering from the ongoing nature of Defendants' conversion and most Class members are still Account Holders which entitles them to preliminary and permanent injunctive relief.

## SECOND CAUSE OF ACTION: FRAUDULENT MISREPRESENTATION
### (ALL PLAINTIFFS INDIVIDUALLY AND ON BEHALF OF A NATIONAL CLASS AGAINST ALL DEFENDANTS)

132.    Plaintiffs adopt and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

133.    Plaintiffs bring this claim individually and on behalf of a National class against all Defendants.

134.    Defendants engaged in the tort of common law fraud or fraudulent misrepresentation.

135.    The elements of fraudulent misrepresentation are (1) the defendant made a false representation, (2) in reference to a material fact, (3) that the defendant made with knowledge of its falsity, (4) with an intent to deceive, and (5) reliance was taken based on the representation.

136.    As described in the allegations above, the Defendants' statements about their ability to provide Account Holders with immediate access to funds, transfers within five (5) days, the state of Defendants' financial health and the effort and solutions that are being taken to resolve the issue to transfer funds were false when they made them.

137.    The Defendants knew that Account Holders would rely on the policies and email communications when subscribing to Defendants' business.

138.    Plaintiffs and Class relied upon Defendants' statements when they chose to

24

subscribe to Defendant's business.

139.    In like manner, Plaintiffs and Class reasonably relied upon Defendants' emails and communications to carry out their own stated policies and waited for funds to be transferred.

140.    The Defendants' fraudulent misrepresentations proximately caused harm to Plaintiff and Class who suffered compensatory loss, expended effort to deal with Defendants' failure, and suffered major disruptions to the operation of the nonprofit's activities, donor relations, and stakeholder confidence.

141.    Plaintiffs and Class members are therefore entitled to compensatory damages for all actual, statutory, and punitive damages to recover pecuniary loss, expenses incurred, and other costs that the jury may determine fair and reasonable.

142.    Plaintiffs and Class members are entitled to attorney's fees and reimbursement of all costs as deemed fair and reasonable by the court.

143.    Plaintiffs and class members are also entitled to preliminary and permanent injunctive relief for ongoing misrepresentations by Defendants.

## THIRD CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION
### (ALL PLAINTIFFS INDIVIDUALLY AND ON BEHALF OF A NATIONAL CLASS AGAINST ALL DEFENDANTS)

144.    Plaintiffs adopt and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

145.    Plaintiffs bring this claim individually and on behalf of a National class against all Defendants.

146.    Defendants committed the tort of negligent misrepresentation elements of which claim are: (1) the defendant made a false statement or omission of a fact, (2) the statement was in violation of a duty to exercise reasonable care, (3) the false statement or

25

omission involved a material issue, (4) the plaintiff reasonably relied and to its detriment relied on the false information, and (5) the defendant's challenged conduct proximately caused injury to the plaintiff.

147.    As described in the allegations above, the Defendants' statements about their ability to provide Account Holders with immediate access to funds, transfers within five (5) days, and the state of Defendants' financial health and the effort and solutions that are being taken to resolve the issue to transfer funds were false when they made them.

148.    These false statements violated the Defendants' duty of reasonable care to provide accurate information to their Account Holders who reasonably relied on them.

149.    The Defendants' misrepresentations proximately caused harm to Plaintiff and Class who suffered compensatory loss, expended effort to deal with Defendants' failure, and suffered major disruptions to the operation of the nonprofit's activities, donor relations, and stakeholder confidence.

150.    Plaintiffs and Class members are therefore entitled to compensatory damages for all actual, statutory, and punitive damages to recover pecuniary loss, expenses incurred, and other costs that the jury may determine fair and reasonable.

151.    Plaintiffs and Class members are entitled to attorney's fees and reimbursement of all costs as deemed fair and reasonable by the court.

152.    Plaintiffs and class members are also entitled to preliminary and permanent injunctive relief for ongoing misrepresentations by Defendants.

## FOURTH CAUSE OF ACTION : BREACH OF CONTRACT

### (ALL PLAINTIFFS INDIVIDUALLY AND ON BEHALF OF A NATIONAL CLASS AGAINST ALL DEFENDANTS)

153.    Plaintiffs repeat and realleges all preceding paragraphs in support of this claim.

154.    Plaintiffs and Defendants were parties to a contract and agreement whereby

26

Defendants promised to transfer funds received by donors to Plaintiff within 1-5 business days.

155.   As alleged in the foregoing sections, Defendants breached the contract by failing to process payment of funds to Plaintiff and Class per their contract terms and conditions.

156.   Therefore, Plaintiffs are entitled to compensatory damages resulting from the breach of contract. Plaintiff, individually, and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

157.   Plaintiffs are entitled to all costs and attorney's fees regarding this action per the terms and conditions: "In any action or proceeding to enforce rights under the Terms and Conditions, the prevailing party will be entitled to recover costs and attorneys' fees."[9]

## **FIFTH CAUSE OF ACTION : UNJUST ENRICHMENT**
### (ALL PLAINTIFF INDIVIDUALLY AND ON BEHALF OF NATIONAL CLASS AGAINST ALL DEFENDANTS)

158.   Plaintiffs, and the putative National class, conferred a tangible economic benefit upon Defendants by subscribing to Defendants' business as an account holder.

159.   Through the profits gained by Plaintiffs' subscription fees, transaction fees on all funds received by Plaintiff, Defendants reaped millions of dollars of profit and investments from its unfair practices, misrepresentations and deceptive trade practices. Defendants specifically represented that Account Holders would have immediate access to funds and that the funds would be transferred to Account Holders' banks within five (5) days. Instead, Defendants were enriched by their misrepresentations. Plaintiff suffered

---

[9] Flipcause, Terms and Conditions § 34, Flipcause (last updated Sept. 3, 2024), https://flipcause.org/terms/

*LMSA-NE et al. v. FLIPCAUSE, INC.* et al.– FIRST AMENDED COMPLAINT
25-cv-09047

monetary harm as a result.

160.   Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiff and members of the putative national class.

161.   It would thus be unjust and inequitable for Defendants to retain the benefit reaped from Plaintiffs and National Class members without restitution or disgorgement of valuable goods (e.g., transaction fees, subscription fees, etc.) provided to Defendants, or such other appropriate equitable remedy as appropriate, to the Plaintiff and other members of the putative National class.

### SIXTH CAUSE OF ACTION : INJUNCTIVE RELIEF
### (ALL PLAINTIFFS INDIVIDUALLY AND ON BEHALF OF A NATIONAL CLASS AGAINST ALL DEFENDANTS)

162.   Plaintiffs, individually, and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

163.   Defendants have refused to act on grounds generally applicable to the injunctive relief sought by Plaintiff and other members of the putative class and subclass, thereby making preliminary and permanent injunctive relief appropriate.

164.   Defendant's conduct of withholding funds from Plaintiff and Class are jeopardizing the operations of Plaintiff and causing immediate harm to Plaintiff and Class.

165.   If Defendants continue with these practices, consumers, including the Plaintiff and Class will be irreparably harmed in that they do not have a plain, adequate, speedy, or complete remedy at law to address all of the wrongs alleged in this Complaint, unless injunctive relief is granted to stop Defendants' improper conduct.

166.   Plaintiffs and the putative National class and Sub-classes are therefore,

entitled to a preliminary and permanent injunction requiring Defendants to immediately transfer funds owed to Plaintiff and class as well as all compensatory losses suffered by Plaintiff and Class.

## SEVENTH CAUSE OF ACTION: NEW YORK GENERAL BUSINESS LAW § 349

### (PLAINTIFFS LATINO MEDICAL STUDENT ASSOCIATION-NORTH EAST, KEEPING OUR PROMISE INC, AND MEALS FOR GOOD INC., INDIVIDUALLY AND ON BEHALF OF A NEW YORK SUBCLASS AGAINST ALL DEFENDANTS)

167.   The New York Plaintiffs identified above restates each and every paragraph of this Complaint as if fully rewritten herein.

168.   Plaintiffs bring this claim on behalf of New York Sub-Class members.

169.   Plaintiffs and New York Sub-Class members and Defendants are "persons" under N.Y. Gen. bus. Law § 349(h), the New York Deceptive Acts and Practices Act ("NY DAPA").

170.   Defendants' actions as set forth herein occurred in the conduct of trade or commerce under the NY DAPA.

171.   The NY DAPA makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349.

172.   Defendants' conduct, as set forth above, constitutes deceptive acts or practices under this section, namely: Defendants' statements about their ability to provide Account Holders with immediate access to funds, transfers within five (5) days, the state of Defendants' financial health and the effort and solutions that are being taken to resolve the issue to transfer funds were false when they made them.

173.   Plaintiffs and New York Sub-Class members had no way of discerning whether Defendants' representations were false and misleading because Sub-Class members do not have access to Defendants' internal protocols, practice, and operations.

29

174.    Defendants thus violated the NY DAPA by making false statements that induced reasonable consumers to subscribe to the Defendants' business and continue to wait for their funds to be transferred.

175.    Defendants intentionally and knowingly made affirmative misrepresentations with intent to mislead Plaintiff and New York Sub-Class members.

176.    Defendants knew or should have known that their conduct violated NY DAPA.

177.    Defendants' misrepresentations of their services were material to Plaintiff and Class members.

178.    Defendants' unfair and deceptive acts were likely to, and did in fact, deceive regulators and reasonable consumers, including Plaintiff and Sub-Class members,

179.    Plaintiffs and New York Sub-Class members relied on the misrepresentations when they subscribed to Defendants' business, which Defendants used to make profit.

180.    Defendants' violations present continuing harm to Plaintiff, New York Sub-Class members, and the general public.

181.    Plaintiffs and New York Sub-Class are entitled to all injunctive relief, actual and statutory damages and punitive damages to the extent available under the law, reasonable attorneys' fees and costs, and all other just and appropriate relief available under the NY DAPA.

182.    Defendants' unlawful acts and practices complained of herein affect the public interest.

183.    Plaintiffs and New York State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' actions.

184.    Defendants have an ongoing duty to all customers and the public to refrain from unfair and deceptive practices under the NY DAPA. As a result of Defendants' ongoing unlawful acts, Plaintiffs and all Class members are suffering ongoing harm.

185.   As a result of the foregoing willful, knowing, and wrongful conduct of Defendants, Plaintiff and Class members have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including but not limited to actual damages or $50, whichever is greater, treble damages up to $1,000, punitive damages to the extent available under the law, reasonable attorneys' fees and costs, an order enjoining Defendants' deceptive and unfair conduct, and all other just and appropriate relief available under the NY DAPA.

### EIGHTH CAUSE OF ACTION: NEW YORK GENERAL BUSINESS LAW § 350
### (PLAINTIFFS LATINO MEDICAL STUDENT ASSOCIATION-NORTH EAST, KEEPING OUR PROMISE INC, AND MEALS FOR GOOD INC., INDIVIDUALLY AND ON BEHALF OF NEW YORK SUB-CLASS AGAINST ALL DEFENDANTS)

186.   The New York Plaintiffs identified above incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

187.   Plaintiffs bring this claim on behalf of New York State Class members.

188.   Defendants were engaged in the "conduct of business, trade or commerce," within the meaning of N.Y. Gen. Bus. Law § 350, the New York False Advertising Act ("NY FAA").

189.   The NY FAA makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of . . . representations [made] with respect to the commodity . . ." N.Y. Gen. Bus. Law § 350-a.

190.   Defendants caused to be made or disseminated through New York, through

31

advertising, marketing, and other publications, statements and omissions that were untrue or misleading, and that were known by Defendants, or that through the exercise of reasonable care should have been known by Defendants, to be untrue and misleading.

191.   Defendants made numerous material and affirmative misrepresentations and omissions of fact with intent to mislead and deceive consumers as stated in the foregoing section.

192.   Plaintiffs and New York Sub-Class are entitled to all injunctive relief, actual and statutory damages and punitive damages to the extent available under the law, reasonable attorneys' fees and costs, and all other just and appropriate relief available under the NY FAA.

## NINTH CAUSE OF ACTION : CALIFORNIA BUSINESS AND PROFESSIONAL CODE §§17200 & 17500

(ALL PLAINTIFFS INDIVIDUALLY AND ON BEHALF OF NATIONAL CLASS AGAINST ALL DEFENDANTS, AND PLAINTIFFS CANINE LYMPHOMA EDUCATION AWARENESS AND RESEARCH, KITTYLAND CAT & KITTEN RESCUE, SOFESA, AND THE TORCH FOUNDATION AGAINST ALL DEFENDANTS)

193.   All Plaintiffs restates each and every paragraph of this Complaint as if fully rewritten herein.

194.   Plaintiff on behalf of a National Class alleges claims under California Business and Professional Code §§17200 & 17500 *et seq*.

195.   Defendants have engaged in unfair competition and prohibited activities.

196.   Unfair competition includes any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by California Bus. & Prof. Code §§17200 and 17500 *et seq*.

197.   Plaintiff and the putative National class seek equitable relief and to enjoin

32

Defendants from engaging in its current practice and scheme of making misrepresentations about their services and guidelines, and enforcement to the detrimental harm of its users.

198.    Pursuant to Cal. Bus. & Prof. Code §17200 and 17500 *et seq*., Plaintiff and the putative National class seek an order enjoining the above-described wrongful acts and practices of the Defendants and for restitution and disgorgement.

## TENTH CAUSE OF ACTION : COLORADO CONSUMER PROTECTION ACT, *COLO. REV. STAT. §§ 6-1-101, ET SEQ.* (PLAINTIFFS UKRAINE ORPHAN OUTREACH AND FRIENDS OF MANUAL HIGHSCHOOL INC. INDIVIDUALLY AND ON BEHALF OF COLORADO SUBCLASS AGAINST ALL DEFENDANTS )

199.    The Colorado Plaintiffs identified above ("Plaintiff(s)," for purposes of this Count), individually and on behalf of the Colorado Subclass, restates each and every paragraph of this Complaint as if fully rewritten herein.

200.    Plaintiffs are a "person" as defined by Colo. Rev. Stat. § 6-1-102(6).

201.    Plaintiffs engaged in "sales" as defined by Colo. Rev. Stat. § 6-1-102(10).

202.    Plaintiffs and Colorado Subclass members, as well as the general public, are actual or potential consumers of the products and services offered by Flipcause or successors in interest to actual consumers.

203.    Plaintiffs were consumers of Defendants within 3 years of this date.

204.    Defendants engaged in unfair and deceptive trade practices in the course of its business, in violation of Colo. Rev. Stat. § 6-1-105(1), including: (a) Knowingly making a false representation as to the characteristics of products and services; (b) Representing that services are of a particular standard, quality, or grade, though Flipcause knew or should have known that there were or another; (c) Advertising services with intent not to sell them as advertised; and (d) Failing to disclose material information concerning its services which

was known at the time of an advertisement or sale when the failure to disclose the information was intended to induce the consumer to enter into the transaction.

205.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

206.    Defendants intended to mislead Plaintiff and Colorado Subclass members and induce them to rely on its misrepresentations and omissions.

207.    Had Defendants disclosed to Plaintiff and Colorado Subclass members that it misrepresented the timing of transfer Plaintiff would not have continued to use the subscriptions.

208.    Plaintiff and the Colorado Subclass members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

209.    Defendants acted intentionally, knowingly, and maliciously to violate Colorado's Consumer Protection Act, and recklessly disregarded Plaintiff and Subclass members' rights.

210.    As a direct and proximate result of Defendants' deceptive trade practices, Colorado Subclass members suffered injuries to their legally protected interests.

211.    Defendants' deceptive trade practices significantly impact the public, because Flipcause's failure has harmed the operation and mission of Plaintiff's nonprofits.

212.    Plaintiffs and Colorado Subclass members seek all monetary and non-monetary relief allowed by law, including the greater of: (a) actual damages, or (b) $500, or (c) three times actual damages (for bad faith conduct); injunctive relief; and reasonable attorneys' fees and costs.

## ELEVENTH CAUSE OF ACTION : MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT. *MINN. STAT. §§ 325D.43, ET SEQ.* (RECYCLING

*LMSA-NE et al. v. FLIPCAUSE, INC*. et al.– FIRST AMENDED COMPLAINT
25-cv-09047

ASSOCIATION OF MINNESOTA *INDIVIDUALLY AND ON BEHALF OF MINNESOTA SUBCLASS AGAINST ALL DEFENDANTS)*

213.   The Minnesota Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Minnesota Subclass, restates each and every paragraph of this Complaint as if fully rewritten herein.

214.   By engaging in deceptive trade practices in the course of its business and vocation, directly or indirectly affecting the people of Minnesota, Defendants violated Minn. Stat. § 325D.44, including the following provisions: representing that its goods and services had characteristics, uses, and benefits that they did not have, in violation of Minn. Stat. §325D.44(1)(5); representing that goods and services are of a particular standard or quality when they are of another, in violation of Minn. Stat. § 325D.44(1)(7); advertising goods and services with intent not to sell them as advertised, in violation of Minn. Stat. § 325D.44(1)(9); and engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding, in violation of Minn. Stat. § 325D.44(1)(13).

215.   Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

216.   Defendants intended to mislead Plaintiff and Minnesota Subclass members and induce them to rely on its misrepresentations and omissions.

217.   Had Defendants disclosed the problems with payment processing times, it could not continue its business and it would have been forced to disclose the problems.

218.   Plaintiff and the Minnesota Subclass members acted reasonably in relying on Defendants' misrepresentations and omissions and allowed more donor funds to be paid to Defendants, the truth of which they could not have discovered.

219.   Defendants acted intentionally, knowingly, and maliciously to violate Minnesota's Uniform Deceptive Trade Practices Act, and recklessly disregarded Plaintiff

35

and Minnesota Subclass members' rights.

220.    As a direct and proximate result of Defendants' deceptive trade practices, Plaintiff and Minnesota Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including not receiving the benefit of the subscription they paid for and increased time and expense in dealing with fund witholding issues.

221.    Plaintiff and Minnesota Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief and attorneys' fees and costs.

## TWELFTH CAUSE OF ACTION : PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73 PA. CONS. STAT. §§ 201-2 & 201-3, ET SEQ (TEAM SUNSHINE PERFORMANCE *INDIVIDUALLY AND ON BEHALF OF PENNSYLVANIA SUBCLASS AGAINST ALL DEFENDANTS)*

222.    The Pennsylvania Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Pennsylvania Subclass, repeats and alleges the paragraph of this Complaint as if fully alleged herein.

223.    Defendants are a "person," as meant by 73 Pa. Cons. Stat. § 201-2(2).

224.    Plaintiff and Pennsylvania Subclass members purchased goods and services in "trade and commerce," defined to include distribution of any services, any property, or any other thing of value. Pa. Stat. Ann. tit. 73, § 201-2(3)

225.    Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of its trade and commerce in violation of 73 Pa. Cons. Stat. Ann. § 201-3, including the following: (a) Representing that its goods and services have characteristics, uses, benefits, and qualities that they do not have (73 Pa. Stat. Ann. § 201-2(4)(v)); (b) Representing that its goods and services are of a particular standard or quality if they are another (73 Pa. Stat. Ann. § 201-2(4)(vii)); and (c) Advertising its goods and

36

services with intent not to sell them as advertised (73 Pa. Stat. Ann. § 201-2(4)(ix)).

226.  Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

227.  Defendants intended to mislead Plaintiff and Pennsylvania Subclass members and induce them to rely on their misrepresentations and omissions.

228.  Had Defendants disclosed to Plaintiffs and Pennsylvania Subclass members that it misrepresented the problems and delays in payment transfers they would have been unable to continue in business and it would have been forced to disclose the problems.

229.  Defendants acted intentionally, knowingly, and maliciously to violate Pennsylvania Unfair Trade Practices and Consumer Protection Law, and recklessly disregarded Plaintiff and Pennsylvania Subclass members' rights.

230.  Defendants' unfair methods of competition and unfair or deceptive acts or practices and Plaintiff's and the Pennsylvania Subclass' reliance on them, Plaintiff and Pennsylvania Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages.

231.  Plaintiff and Pennsylvania Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $100 (whichever is greater), treble damages, attorneys' fees and costs, and any additional relief the Court deems necessary or proper.

## THIRTEENTH CAUSE OF ACTION : OREGON UNLAWFUL TRADE PRACTICES ACT, *OR. REV. STAT. §§ 646.608, ET SEQ*. (GARDEN OF PEACE *INDIVIDUALLY AND ON BEHALF OF OREGON SUBCLASS AGAINST ALL DEFENDANTS)*

232.  The Oregon Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Oregon Subclass, repeats and alleges the

37

paragraphs in this Complaint as if fully alleged herein.

233.    Defendants are a "person," as defined by Or. Rev. Stat. § 646.605(4).

234.    Defendants engaged in the sale of "goods and services," as defined by Or. Rev. Stat. § 646.605(6)(a).

235.    Defendants advertised, offered, or sold goods or services in Oregon and engaged in trade or commerce directly or indirectly affecting the people of Oregon.

236.    Defendants engaged in unlawful practices in the course of its business and occupation, in violation of Or. Rev. Stat. § 646.608, included the following: (a) Representing that its goods and services have approval, characteristics, uses, benefits, and qualities that they do not have, in violation of Or. Rev. Stat. § 646.608(1)(e); (b) Representing that its goods and services are of a particular standard or quality if they are of another, in violation of Or. Rev. Stat. § 646.608(1)(g); (c) Advertising its goods or services with intent not to provide them as advertised, in violation of Or. Rev. Stat. § 646.608(1)(i); and (d) Concurrent with tender or delivery of its goods and services, failing to disclose any known material defect, in violation of Or. Rev. Stat. § 646.608(1)(t).

237.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

238.    Defendants intended to mislead Plaintiff and Oregon Subclass members and induce them to rely on its misrepresentations and omissions.

239.    Had Defendants disclosed to Plaintiffs and Oregon Subclass regarding the delay and failure to transfer funds Defendants would have been unable to continue its business, and it would have been forced to disclose the problems.

240.    Plaintiff and the Oregon Subclass members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

241.    Defendants intentionally, knowingly, and maliciously to violate Oregon's

38

Unlawful Trade Practices Act, and recklessly disregarded Plaintiff and Oregon Subclass members' rights.

242.   As a direct and proximate result of Defendants' unlawful practices, Plaintiff and Oregon Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, and increased time and expense in dealing with the fund transfer failure issues.

243.   Plaintiff and Oregon Subclass members seek all monetary and non-monetary relief allowed by law, including equitable relief, actual damages or statutory damages of $200 per violation (whichever is greater), punitive damages, and reasonable attorneys' fees and costs.

## FOURTEENTH CAUSE OF ACTION : ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS §§ 505, ET SEQ.
### (CHICAGO COALITION FOR FAMILY BUILDING *INDIVIDUALLY AND ON BEHALF OF ILLINOIS SUBCLASS AGAINST ALL DEFENDANTS)*

244.   The Illinois Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Illinois Subclass, repeats and all paragraphs in this Compliant as if alleged herein.

245.   Defendants are a "person" as defined by 815 ILCS §§ 505/1(c).

246.   Plaintiff and Illinois Subclass members are "consumers" as defined by 815 ILCS §§ 505/1(e).

247.   Defendants' conduct as described herein was in the conduct of "trade" or "commerce" as defined by 815 ILCS § 505/1(f).

248.   Defendants' deceptive, unfair, and unlawful trade acts or practices, in violation of 815 ILCS § 505/2.

249.   Defendants' representations and omissions were material because they were

39

likely to deceive reasonable consumers.

250.   Defendants intended to mislead Plaintiff and Illinois Subclass members and induce them to rely on its misrepresentations and omissions.

251.   The above unfair and deceptive practices and acts by Defendants were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury that these consumers could not reasonably avoid; this substantial injury outweighed any benefit to consumers or to competition.

252.   Defendants acted intentionally, knowingly, and maliciously to violate Illinois's Consumer Fraud Act, and recklessly disregarded Plaintiff and Illinois Subclass members' rights.

253.   As a direct and proximate result of Defendants' unfair, unlawful, and deceptive acts and practices, Plaintiff and Illinois Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing subscriptions, and increased time and expense in dealing with Defendants' failure to transfer funds.

254.   Plaintiff and Illinois Subclass members seek all monetary and non-monetary relief allowed by law, including damages, restitution, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## FIFTEENTH CAUSE OF ACTION: MISSOURI MERCHANDISE PRACTICES ACT, *MO. REV. STAT. §§ 407.010, ET SEQ.* (EAST GRAND COMMUNITY SERVICES *INDIVIDUALLY AND ON BEHALF OF MISSOURI SUBCLASS AGAINST ALL DEFENDANTS)*

255.   The Missouri Plaintiff(s) identified above ("Plaintiff," for purposes of this

40

Count), individually and on behalf of the Missouri Subclass, repeats and alleges the paragraphs in this Complaint as if fully alleged herein.

256.    Defendants are a "person" as defined by Mo. Rev. Stat. § 407.010(5).

257.    Defendants advertised, offered, or sold goods or services in Missouri and engaged in trade or commerce directly or indirectly affecting the people of Missouri, as defined by Mo. Rev. Stat. § 407.010(4), (6) and (7).

258.    Plaintiff and Missouri Subclass members purchased from Defendants, "merchandise" to include "intangibles" and "services," and "trade or commerce" which is broadly defined to include distribution of "any property" and "any . . . other thing of value." Mo. Rev. Stat. § 407.010(4), (7).

259.    Defendants engaged in unlawful, unfair, and deceptive acts and practices, in connection with the sale or advertisement of merchandise in trade or commerce, in violation of Mo. Rev. Stat. § 407.020(1), as described herein.

260.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

261.    Defendants intended to mislead Plaintiff and Missouri Subclass members and induce them to rely on its misrepresentations and omissions.

262.    Defendants acted intentionally, knowingly, and maliciously to violate Missouri's Merchandise Practices Act, and recklessly disregarded Plaintiff and Missouri Subclass members' rights.

263.    As a direct and proximate result of Defendants' unlawful, unfair, and deceptive acts and practices, Plaintiff and Missouri Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their subscription, and increased time and expense in dealing with the Defendants' fund transfer failure issues.

264.    Plaintiff and Missouri Subclass members seek all monetary and non-monetary

41

relief allowed by law, including actual damages, punitive damages, attorneys' fees and costs, injunctive relief, and any other appropriate relief.

### SIXTEENTH CAUSE OF ACTION: CONNECTICUT UNFAIR TRADE PRACTICES ACT, C.G.S.A. § 42-110G (MS PRESIDENT US  AND US SUBMARINE VETERANS CHARITABLE FOUNDATION (USSVCF)) *INDIVIDUALLY AND ON BEHALF OF CONNECTICUT SUBCLASS AGAINST ALL DEFENDANTS)*

265.   The Connecticut Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Connecticut Subclass, repeats and alleges paragraphs in this Complaint, as if fully alleged herein.

266.   Defendants' is a "person" as defined by C.G.S.A. § 42-110a(3).

267.   Defendants are engaged in "trade" or "commerce" as those terms are defined by C.G.S.A. § 42-110a(4).

268.   Defendants advertised, offered, or sold goods or services in Connecticut, and engaged in trade or commerce directly or indirectly affecting the people of Connecticut.

269.   Defendants  engaged in deceptive acts and practices and unfair acts and practices in the conduct of trade or commerce, in violation of the C.G.S.A. § 42-110b, including: (a) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have; (b) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and (c) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

270.   Defendants' representations and omissions were material because they were

likely to deceive reasonable consumers.

271.   Defendants intended to mislead Plaintiff and Connecticut Subclass members and induce them to rely on its misrepresentations and omissions.

272.   Had Defendants disclosed to Plaintiff and Connecticut Subclass members that they could not transfer funds due to problems they face, they would have been unable to continue in business and would have been forced to disclose the problems.

273.   Plaintiff and the Connecticut Subclass members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

274.   Defendants acted intentionally, knowingly, and maliciously to violate the Connecticut Unfair Trade Practices Act, and recklessly disregarded Plaintiff and Connecticut Subclass members' rights.

275.   As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and Connecticut Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the subscription, and increased time and expense in dealing with fund transfer delays and failures.

276.   Defendants' deceptive acts and practices caused substantial, ascertainable injury to Plaintiff and Connecticut Subclass members, which they could not reasonably avoid, and which outweighed any benefits to consumers or to competition.

277.   Defendants' violations of Connecticut law were done with reckless indifference to the Plaintiff and the Connecticut Subclass or was with an intentional or wanton violation of those rights.

278.   Plaintiffs request damages in the amount to be determined at trial, including statutory and common law damages, attorneys' fees, and punitive damages.

43

**SEVENTEENTH CAUSE OF ACTION: TENNESSEE CONSUMER PROTECTION ACT (T. C. A. § 47-18-101, ET SEQ.)** (SOLDIERS AND FAMILIES EMBRACED *INDIVIDUALLY AND ON BEHALF OF TENNESSEE SUBCLASS AGAINST ALL DEFENDANTS)*

279.   The Tennessee Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Tennessee Subclass, repeats and alleges this Complaint's paragraphs as if fully alleged herein.

280.   Defendants are a "person," as defined by Tenn. Code § 47-18-103(13).

281.   Plaintiff and Tennessee Subclass members are "consumers," as meant by Tenn. Code § 47-18-103(2).

282.   Defendants advertised and sold "goods" or "services" in "consumer transaction[s]," as defined by Tenn. Code §§ 47-18-103(7), (18) & (19).

283.   The Tennessee Consumer Protection Act (hereinafter TCPA) is expressly intended to protect "consumers" like Plaintiff and Class members from unfair or deceptive trade practices.

284.   Defendants advertised, offered, or sold goods or services in Tennessee and engaged in trade or commerce directly or indirectly affecting the people of Tennessee, as defined by Tenn. Code §§ 47-18-103(7), (18) & (19). And Defendants' acts or practices affected the conduct of trade or commerce, under Tenn. Code § 47-18-104.

285.   Defendants intended to mislead Plaintiff and Tennessee Subclass members and induce them to rely on its misrepresentations and omissions.

286.   Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

287.   Had Defendants disclosed to Plaintiffs and Tennessee Subclass members that

44

it misrepresented the fund transfer problems, they would have been unable to continue in business and it would have been forced to disclose the problems.

288.  Plaintiff and the Tennessee Subclass members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

289.  By misrepresenting and omitting material facts, Defendants violated the provisions of Tenn. Code § 47-18-104(b).

290.  Defendants acted intentionally, knowingly, and maliciously to violate Tennessee's Consumer Protection Act, and recklessly disregarded Plaintiff and Tennessee Subclass members' rights.

291.  As a direct and proximate result of Defendants' unfair and deceptive acts or practices, Plaintiff and Tennessee Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing subscriptions, and increased time and expense in dealing with failed fund transfer issues.

292.  Defendants' violations present a continuing risk to Plaintiff and Tennessee Subclass members as well as to the general public.

293.  Plaintiff and Tennessee Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, actual damages, treble damages for each willful or knowing violation, attorneys' fees and costs, and any other relief that is necessary and proper.

## EIGHTEENTH CAUSE OF ACTION: WASHINGTON CONSUMER PROTECTION ACT (WASH. REV. CODE ANN. § 19.86.010, *ET SEQ.*)

45

(WASHINGTON STATE CRIME PREVENTION ASSOCIATION *INDIVIDUALLY AND ON BEHALF OF WASHINGTON SUBCLASS AGAINST ALL DEFENDANTS*)

294.    The Washington Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Washington Subclass, repeats and alleges this Complaint's paragraphs as if fully alleged herein.

295.    Plaintiff brings this Count on behalf of all Class members.

296.    The Washington Consumer Protection Act ("Washington CPA") broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." WASH. REV. CODE ANN. § 19.96.010.

297.    Defendants' acts complained of herein are deceptive and unfair within the meaning of the Washington CPA. WASH. REV. CODE ANN. § 19.96.010.

298.    Defendants  committed the acts complained of herein in the course of "trade" or "commerce" within the meaning of the Washington CPA. WASH. REV. CODE ANN. § 19.96.010.

299.    Defnedants' deceptive and unfair practices, as alleged herein, are injurious to the public interest as they have the capacity to injure other persons.

300.    Plaintiff and the Class members purchased the Flipcause subscriptions which allowed for donors to give funds for Plaintiff's charitable organizational mission.

301.    Defendants' deceptive and unfair practices, as alleged herein, injured Plaintiff and the Class in their business or property due to Defendants' misrepresentation about its ability transfer funds to Plaintiff.

302.    Plaintiff and the Class would not have purchased Defendants' subscriptions had they known about Defendants' misrepresentations.

303.    Defendants are liable to Plaintiff and the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages, as well as any other

46

remedies the Court may deem appropriate under WASH. REV. CODE ANN. § 19.86.090.

## NINETEENTH CAUSE OF ACTION: NORTH CAROLINA UNFAIR TRADE PRACTICES ACT, N.C. GEN. STAT. ANN. §§ 75-1.1, ET SEQ. (HUNGER COALITION OF TRANSYLVANIA COUNTY  AND TREES FOR THE TRIANGLE *INDIVIDUALLY AND ON BEHALF OF NORTH CAROLINA SUBCLASS AGAINST ALL DEFENDANTS)*

304.   The North Carolina Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the North Carolina Subclass, repeats and alleges paragraphs in the Complaint as if fully alleged herein.

305.   Defendants advertised, offered, or sold goods or services in North Carolina and engaged in trade or commerce directly or indirectly affecting the people of North Carolina, as defined by N.C. Gen. Stat. Ann. § 75-1.1(b).

306.   Defendants engaged in unfair and deceptive acts and practices in or affecting commerce, in violation of N.C. Gen. Stat. Ann. § 75-1.1, as described herein.

307.   Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

308.   Defendants intended to mislead Plaintiff and North Carolina Subclass members and induce them to rely on its misrepresentations and omissions.

309.   Had Defendants disclosed to Plaintiff and North Carolina Subclass members that it misrepresented the fund transfer process and ability, it would have been unable to continue in business and it would have been forced to disclose the problems.

310.   Plaintiff and the North Carolina Subclass members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

47

311.   Defendants acted intentionally, knowingly, and maliciously to violate North Carolina's Unfair Trade Practices Act, and recklessly disregarded Plaintiff and North Carolina Subclass members' rights.

312.   As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff and North Carolina Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their subscription, and increased time and expense in dealing with delayed and failed funds.

313.   Defendants' unfair and deceptive conduct as alleged herein are continuous.

314.   Plaintiff and North Carolina Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, treble damages, and attorneys' fees and costs.

## TWENTIETH CAUSE OF ACTION: FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, *FLA. STAT. §§ 501.201, ET SEQ.* (ANGELS FOR CHANGE *INDIVIDUALLY AND ON BEHALF OF FLORIDA SUBCLASS AGAINST ALL DEFENDANTS)*

315.   The Florida Plaintiff(s) identified above ("Plaintiff," for purposes of this Count) individually and on behalf of the Florida Subclass, repeats and alleges the paragraphs in this complaint, as if fully alleged herein.

316.   Defendants advertised, offered, or sold goods or services in Florida and engaged in trade or commerce directly or indirectly affecting the people of Florida.

317.   Defendants engaged in unconscionable, unfair, and deceptive acts and practices in the conduct of trade and commerce, in violation of Fla. Stat. § 501.204(1).

318.   Defendants' representations and omissions were material because they were

48

likely to deceive reasonable consumers.

319.   Had Defendants disclosed to Plaintiff and Florida Subclass members that it misrepresented the fund transfer timing and ability, they would have been unable to continue in business and it would have been forced to disclose the problems.

320.   Plaintiff and the Florida Subclass members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

321.   As a direct and proximate result of Defendants' unconscionable, unfair, and deceptive acts and practices, Plaintiff and Florida Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the subscriptions, and increased time and expense in dealing with delayed and failed fund transfer issues.

322.   Plaintiff and Florida Subclass members seek all monetary and non-monetary relief allowed by law, including actual or nominal damages under Fla. Stat. § 501.21; declaratory and injunctive relief; reasonable attorneys' fees and costs, under Fla. Stat. § 501.2105(1); and any other relief that is just and proper.

**TWENTY-FIRST CAUSE OF ACTION: ARIZONA CONSUMER FRAUD ACT, A.R.S. §§ 44-1521, ET SEQ.** (TUCSON POPS ORCHESTRA AND NATIONAL ASSOCIATION OF STATE TRUST LANDS *INDIVIDUALLY AND ON BEHALF OF ARIZONA  SUBCLASS AGAINST ALL DEFENDANTS)*

323.   The Arizona Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Arizona Subclass, repeats and alleges the paragraphs in the Complaint as if fully alleged herein.

49

324.   Defendants are a "person" as defined by A.R.S. § 44-1521(6).

325.   Defendants advertised, offered, or sold goods or services in Arizona and engaged in trade or commerce directly or indirectly affecting the people of Arizona.

326.   Defendants engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts affecting the people of Arizona in connection with the sale and advertisement of "merchandise" which includes a broad range of services. *See Haisch v. Allstate Ins. Co*., 5 P.3d 940 (Ariz. App. 2000); Arizona Consumer Fraud Act, A.R.S. § 44-1521(5); A.R.S. § 44-1522(A).

327.   Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

328.   Defendants intended to mislead Plaintiff and Arizona Subclass members and induce them to rely on its misrepresentations and omissions.

329.   Had Defendants disclosed to Plaintiff and Arizona Subclass members that it misrepresented the Devices and operating software, omitted material information regarding the fund transfer ability and process, Defendants would have been unable to continue in business, and it would have been forced to disclose the problems.

330.   Plaintiff and the Arizona Subclass members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

331.   Defendants intentionally, knowingly, and maliciously to violate Arizona's Consumer Fraud Act, and recklessly disregarded Plaintiff and Arizona Subclass members' rights.

332.   As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff and Arizona Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary

50

damages, including from not receiving the benefit of their bargain in purchasing the subscription, and increased time and expense in dealing with delayed and failed fund transfer issues.

333.    Plaintiff and Arizona Subclass members seek all monetary and non-monetary relief allowed by law, including compensatory damages; disgorgement; punitive damages; injunctive relief; and reasonable attorneys' fees and costs.

**TWENTY-SECOND CAUSE OF ACTION: IOWA PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUDS ACT, IOWA CODE § 714H** (WEST LIBERTY YOUTH DREAM CATCHERS INC. *INDIVIDUALLY AND ON BEHALF OF IOWA  SUBCLASS AGAINST ALL DEFENDANTS)*

334.    The Iowa Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Iowa Subclass, repeats and alleges Paragraphs 1-472, as if fully alleged herein.

335.    Defendants are a "person" as defined by Iowa Code § 714H.2(7).

336.    Plaintiff and Iowa Subclass members are "consumers" as defined by Iowa Code § 714H.2(3).

337.    Defendants' conduct described herein related to the "sale" or "advertisement" of "merchandise" as defined by Iowa Code §§ 714H.2(2), (6), & (8).

338.    Defendants engaged in unfair, deceptive, and unconscionable trade practices, in violation of the Iowa Private Right of Action for Consumer Frauds Act, as described throughout and herein.

339.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

340.    Defendants intended to mislead Plaintiff and Iowa Subclass members and

51

induce them to rely on its misrepresentations and omissions.

341.   Defendants acted intentionally, knowingly, and maliciously to violate Iowa's Private Right of Action for Consumer Frauds Act, and recklessly disregarded Plaintiff and Iowa Subclass members' rights despite knowledge of the failures in payment transfer process and ability.

342.   As a direct and proximate result of Defendants' unfair, deceptive, and unconscionable conduct, Plaintiff and Iowa Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the subscription, and increased time and expense in dealing with failed and delayed fund transfer issues.

343.   Plaintiff and Iowa Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, damages, punitive damages, and reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, the putative representative Plaintiffs, on behalf of themselves and the putative members of the class defined herein prays for judgment against the Defendants as follows:

A. For an order certifying this action and/or common issues raised herein as a "Class Action under the appropriate provision of Federal Rule of Civil Procedure 23(a), 23(b)(2) and/or (b)(3); designating Class Representatives; and appointing the undersigned to serve as class counsel.

B. For notice of class certification and of any relief to be disseminated to all Class Members and for such other further notices as this Court deems appropriated under Fed. R. Civ. P. 23(d)(2);

C. For an order barring Defendants from destroying or removing any computer or

similar records which record evidence related to the claims above.

D. For an order barring Defendants from attempting, on their own or through their agents, to induce any putative Class Members to sign any documents which in any way releases any of the claims of any Putative Class Members;

E. For and order granting declaratory and preliminary and permanent injunctive relief to Plaintiffs as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, all plaintiff and class members and pay them, restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by the Court to be wrongful;

F. For an award of compensatory damages in the amount exceeding $5,000,000, to be determined by proof of all injuries and damages described herein and to be proven at trial;

G. Awarding Plaintiffs and the National Class and Sub-Class members appropriate relief, including actual and statutory damages;

H. Awarding Plaintiffs, the National Class and Sub-Class members punitive damages to the extent allowable by law, in an amount to be proven at trial;

I. Awarding restitution and disgorgement of Defendants' revenues to the Plaintiffs and the proposed Class and Sub-Class members;

J. Ordering Defendants to change their misrepresentations and engage in a corrective advertising campaign;

K. Awarding Plaintiffs and the Class reasonable attorney's fees and costs of prosecuting this action, including expert witness fees;

L. Awarding pre-judgment and post-judgment interest; and

M. Providing such other relief as may be just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs individually and on behalf of the putative class hereby demand a trial by jury for all issues a jury may properly decide and for all of the requested relief that a jury may award.

Dated: November 17, 2025                    Respectfully submitted,

By:

_____

Juyoun Han, Esq. (seeking pro hac application)
Eric Baum, Esq. (seeking pro hac application)
**EISENBERG & BAUM, LLP**
24 Union Square East, PH
New York, NY 10003
*Attorneys for Plaintiff*

54